640 A.2d 697 (1994)
In re L.R., Respondent, a Member of the Bar of the District of Columbia Court of Appeals.
No. 92-BG-1034.
District of Columbia Court of Appeals.
Argued March 8, 1994.
Decided April 7, 1994.
*698 Wallace E. Shipp, Jr., Deputy Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for petitioner, the Office of Bar Counsel.
L.R., pro se.
Before FERREN, Acting Chief Judge,[*] and STEADMAN and FARRELL, Associate Judges.
FARRELL, Associate Judge:
The Board on Professional Responsibility (BPR), reversing a recommendation of no discipline by a Hearing Committee, directed Bar Counsel to impose the mildest form of disciplinean informal admonitionon respondent because, while appointed to represent a convicted defendant on appeal under the Criminal Justice Act (CJA), respondent agreed simultaneously to file a motion to reduce sentence in the Superior Court in return for a payment of $200 from the defendant personally. The Board found this to be conduct prejudicial to the administration of justice, in violation of DR 1-102(A)(5).[1] Respondent contests the discipline by asserting that he lacked the culpability necessary to support a finding of violation of the rule, and that Bar Counsel failed to prove that his agreement to accept the fee interfered with (was "prejudicial to") the administration of the CJA. We conclude that an informal admonition is warranted in this case, and sustain the Board's direction to Bar Counsel.

I.
Since the facts as recited by the Board are not in essential dispute, we reproduce them in the Board's language with minor emendations, deleting footnotes and record citations. Respondent was admitted to the practice of law in the District of Columbia on June 25, 1984. Over the course of his career in private practice, he practiced personal injury law, domestic relations law and criminal law. On March 28, 1989, this Court appointed him to his third CJA appellate case. The appointment came thirty-nine days after the defendant-complainant had been sentenced to a prison term of six to eighteen years.
On June 5, 1989, respondent was asked by the complainant to file a motion in the Superior Court to reduce his sentence. Respondent was reluctant to engage in this endeavor because he had never filed such a motion. The complainant expressed the urgency with which the motion had to be filed[2] and, as an incentive, volunteered that his relatives would pay respondent a legal fee of $200.00. Respondent agreed to file the motion and to "trust" the complainant for the $200.00.
*699 Respondent neither applied for nor entertained the thought of seeking a CJA appointment in the Superior Court for purposes of being compensated for filing the motion. According to respondent, he believed that the appointment under the CJA to represent the complainant on appeal did not preclude him from accepting a fee for representation at the trial level. Similarly, he never envisioned that the rules governing his appellate appointment would also apply to any representation provided to the client in the Superior Court.
On June 13, 1989, respondent filed a motion and apprised the complainant of the filing. The complainant, in turn, promised to make arrangements for payment of the promised legal fee. During further conversations, the complainant asked respondent to represent him in a civil suit and to investigate why he had been moved from the District of Columbia Jail to Lorton and later, to Arizona. Respondent refused to broaden the scope of his representation to include these additional matters. The motion to reduce sentence was eventually denied.
The complainant became upset when respondent did not accede to his request to represent him in the civil matters. He then told respondent that he was not going to make arrangements for the payment of the $200.00. Respondent told him that their relationship would "probably be unpleasant" if the complainant reneged on his promise.
In August 1989, the complainant wrote a letter to the Chief Deputy Clerk of the District of Columbia Court of Appeals stating that:
Court appointed councilor * * * whom was or maybe still is handling my appeal [sic], is charging me for his services. I was under the impression that there was no fee.
The letter requested the Chief Deputy Clerk to appoint him a new attorney. On September 6, 1989, the Chief Deputy Clerk wrote respondent requesting an answer to the complainant's letter. On September 12, 1989, respondent wrote the complainant, with a copy to the Chief Deputy Clerk. Respondent admitted he had charged the complainant a $200.00 fee to file the motion to reduce sentence. He then waived the fee and urged the complainant to seek new counsel. This Court allowed respondent to withdraw his appearance. On September 20, 1989, the Clerk of the Court referred this matter to Bar Counsel.

II.

A.
Bar Counsel charged respondent with conduct prejudicial to the administration of justice, in violation of DR 1-102(A)(5). As in In re Dwyer, 399 A.2d 1 (D.C.1979), "[t]he basic charge against respondent is conduct contrary to a statute." Id. at 9. That statute is D.C.Code § 11-2606(a) (1989), which prohibits an attorney appointed under the CJA from "request[ing] or accept[ing] any payment or promise of payment for representing a defendant."[3] The Hearing Committee construed the "represent[ation]" in question to mean only that for which the attorney has been expressly appointed. It thus found decisive the fact that the voucher *700 form issued to respondent upon appointment was marked "appeal," and thataccording to testimony before the committeerespondent would have had to obtain a separate CJA appointment to be compensated for filing a motion to reduce sentence. The Committee was troubled that construing
the words "representing a defendant" in Section 11-2606(a) [to] encompass any and all services performed for an indigent defendant... would mean that an attorney appointed to represent a defendant on appeal could not accept a fee for representing him in a civil case, or in a criminal proceeding brought in another jurisdiction. Nor could the attorney collect an outstanding fee for a representation that preceded the appointment.
We agree with the Committee that to extend the prohibition of § 11-2606(a) to these hypothetical situations would be an unreasonable reading of the statute,[4] but unlike the Committee, we think it a perfectly natural reading of the statutory ban to hold that it bars acceptance of payment from the defendant for services performed in the very same case in which the attorney has been appointed to represent the defendant free of chargewhether these services are "appellate" or include the filing of an ancillary motion in the trial court. The point would be obvious were the motion in question one, say, alleging ineffective assistance of trial counsel under D.C.Code § 23-110, a motion this Court has made clear may be a necessary predicate to asserting that claim on appeal. See, e.g., Shepard v. United States, 533 A.2d 1278, 1280 (D.C.1987).[5] It is unthinkable that an attorney appointed for the appeal who judges that motion necessary could request payment for it from the defendant consistently with § 11-2606(a). The result can be no different merely because the motion is more "ancillary" to the appeal, as is a motion to reduce sentence, yet one filed in the same criminal case. The voucher form referred to by the Committee designates the case of appointment by both appellate and criminal case number, and instructs the attorney how to obtain compensation for services "in connection with the above case." Further, documents routinely given counsel appointed on appeal explain that the "appointment encompasses the bringing of any motions deemed appropriate for consideration by the trial court,"[6] and that among the motions counsel may consider in the course of performing appellate duties is a concurrent motion to reduce sentence.[7] We have no difficulty in concluding that § 11-2606(a) prohibits agreements of the sort respondent entered into, conditioning the filing of a motion to reduce sentence in the same criminal case upon payment from the client he was appointed to represent.

B.
Respondent argues that, even if this is so, the Board erred in determining that he engaged in conduct prejudicial to the administration of justice, for two reasons. First, he contends that scienter, or at least reckless disregard for a known obligation, must be shown before an attorney can be held to have violated DR 1-102(A)(5), and he points to the Hearing Committee's express finding that there was not clear and convincing evidence of such recklessness. The Committee's finding, however, was tainted critically by its conclusion that § 11-2606(a) gave respondent no notice of the probable unlawfulness of his conduct. We agree with the Board's contrary determination that respondent, presumed to be aware of the statutory ban, proceeded at his peril in agreeing to accept payment from the defendant without, at a minimum, inquiring of the CJA administrator *701 or others (such as Public Defender Service attorneys) as to what his obligations were. Although respondent maintains that he never received one or both of the documents referred to above that are routinely furnished appointed appellate counsel, appropriate inquiry almost certainly would have informed him of this or equivalent available information about his responsibilities under § 11-2606(a). We deal here with a matter of attorney discipline, not criminal conviction under § 11-2606(b), see note 3, supra, with its requirement of proof of scienter.[8] It is altogether reasonable to expect attorneys appointed under the CJA to reflect upon their duties, and seek informed advice, well before acting in this area latent with the potential of "dishonesty for personal gain." In re Willcher, 447 A.2d 1198, 1200 (D.C.1982) (Willcher II). In short, whether respondent's conduct was reckless or somewhat less blameworthy, it trenched upon the statutory ban in a manner that justifies the issuance of an informal admonition.
Respondent further contends that a finding of violation of DR 1-102(A)(5) required clear and convincing evidence that his conduct had an actual effect upon (was "prejudicial to") the administration of justice. See, e.g., In re Shorter, 570 A.2d 760, 768 (D.C.1990) ("respondent's misconduct did not bear directly upon any decision or the decision-making process of any tribunal"). The Board determined that there had been such an impact,[9] but respondent counters with the Hearing Committee's findingafter hearing the testimonythat there was no clear and convincing evidence "that respondent withdrew as counsel because of his effort to charge [the defendant] a legal fee [sic], as opposed to [the defendant's] unhappiness with the denial of the Rule 35 motion and with respondent's representation in general." This dispute is beside the point. Conduct that violates § 11-2606(a), as respondent's did, is presumptively prejudicial to the administration of the CJA system, if for no other reason than because of the belief it likely will instill in the defendant that the quality of his representation may yet depend upon "`gather[ing] together funds to compensate the attorney whom he has not selected....'" Willcher I, supra note 3, 408 A.2d at 78 (quoting United States v. Senak, 477 F.2d 304, 308 (7th Cir.), cert. denied, 414 U.S. 856, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973)). Whether or not this leads to an actual falling out between attorney and client and the need for reappointment by the court is incidental.
We therefore sustain the Board's determination that respondent engaged in conduct prejudicial to the administration of justice by agreeing to accept payment from the defendant while under appointment to represent him in that very case free of charge.[10] Respondent's defense of good faith misunderstanding was properly taken into account in the Board's decision to direct only the mildest form of discipline, as was his conceded record of unblemished professional practice heretofore.
We affirm the Board's order to Bar Counsel to issue an informal admonition to respondent.[11]
So ordered.
NOTES
[*] Judge Ferren was an Associate Judge of the court at the time of argument. His status changed to Acting Chief Judge on March 18, 1994.
[1] Respondent's conduct took place before January 1, 1991, the effective date of the District of Columbia Rules of Professional Conduct. Former DR 1-102(A)(5) has now been replaced by Rule 8.4(d), under which it is misconduct for an attorney to "[e]ngage in conduct that seriously interferes with the administration of justice." The Comment to the rule states that its prohibition "includes conduct proscribed by the previous Code of Professional Responsibility under DR 1-102(A)(5) as `prejudicial to the administration of justice.'"
[2] The Board took note of the fact that, "[a]ccording to [Super.Ct.] Crim.Rule 35[b], a motion to reduce sentence is to be filed within 120 days of the sentence." The rule also provides, however, that a motion may be filed "not later than 120 days after receipt by the Court of a mandate issued upon affirmance of the judgment or dismissal of the appeal...."
[3] Section 11-2606(a) provides in full:

(a) Whenever the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, or to any person or organization authorized pursuant to section 2605 of this title to render investigative, expert, or other services, or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section. Except as so authorized or directed, no such person or organization may request or accept any payment or promise of payment for representing a defendant. [Emphasis added.]
Bar Counsel has not contended, nor did the Board suggest, that respondent may have violated § 11-2606(b), which goes on to provide:
Any person compensated, or entitled to be compensated, for any services rendered under this chapter who shall seek, ask, demand, receive, or offer to receive, any money, goods, or services in return therefor from or on behalf of a defendant or respondent shall be fined not more than $1,000 or imprisoned not more than one year, or both.
See Willcher v. United States, 408 A.2d 67 (D.C. 1979) (Willcher I); Gregory v. United States, 393 A.2d 132 (D.C.1978).
[4] Cf. In re Dwyer, 399 A.2d at 9 (under corresponding federal CJA provision, "if the payments were made to discharge in whole or in part a preexisting debt, it was not incumbent upon respondent to obtain court approval for such payments").
[5] Nor would it matter that because a § 23-110 motion is a "collateral" attack, the motion receives a new Superior Court case number.
[6] See District of Columbia Court of Appeals Memorandum to Counsel.
[7] See Guide to Appellate Procedure for Defense Counsel Appointed under the Criminal Justice Act (Public Defender Service, March 1985). No issue is presented in this case respecting the obligation, statutory or otherwise, of appellate counsel to file a motion to reduce sentence.
[8] See Willcher I, supra note 3, 408 A.2d at 76 & n. 9; Gregory, supra note 3, 393 A.2d at 139.
[9] "The necessity for allowing respondent to withdraw from the representation of the complainant forced the exercise of administrative procedures that would not have otherwise been employed. The Court [of Appeals] was required to act on the respondent's motion to withdraw and had to appoint new counsel...."
[10] Because we take the case with the issues as framed by the parties, we do not consider whether respondent's conduct separately violated DR 2-106(A), which prohibited charging an "illegal or clearly excessive fee."
[11] In "affirming" the Board's order rather than (as in the usual case) ourselves ordering the imposition of attorney discipline, we give effect to D.C. Bar Rule XI, § 9(c), by which it is the Board that is empowered to "direct Bar Counsel to issue an informal admonition...."