In re Kim E. HALLMARK,
Respondent.

A Member of the Bar of the
District of Columbia.

No. 01–BG–751.

District of Columbia Court of Appeals.

Argued June 20, 2002.
Decided Aug. 28, 2003.

John O. Iweanoge, Washington, DC, for respondent.

Wallace E. Shipp, Jr., Deputy Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

---

1. The Board expanded and added findings to those made by the two Hearing Committees

Before FARRELL, RUIZ and REID, Associate Judges.

RUIZ, Associate Judge:

Kim E. Hallmark excepts from a report and recommendation of the Board on Professional Responsibility ("Board"), which found several violations of Rules 1.4(a), 1.15(d), 1.16(d) and 8.4(d) of the District of Columbia Rules of Professional Conduct and our Rule XI, Sections 2(b)(3) and (4). Respondent challenges the Board's findings that she violated Rules 1.15(d) and 1.16(d) by failing to refund unearned fees to a client after termination of legal representation, and Rule 1.4(a) by failing to keep her clients reasonably informed of the status of their respective cases. She also excepts to the Board's recommendation that she be suspended for ninety days with a requirement that she prove fitness to practice law before reinstatement. Bar Counsel notes an exception to the Board's finding that respondent's conduct in submitting a Criminal Justice Act (CJA) voucher to an Associate Judge of the Superior Court of the District of Columbia did not violate Rule 8.4(d). We accept the Board's findings[1] except for one of the Rule 1.15(d) violations, which we think is duplicative in this case, and adopt the Board's recommendation that respondent be suspended from the practice of law in the District of Columbia for ninety days, with reinstatement conditioned upon a showing of fitness to practice law and proof of restitution to her clients as directed by the Board.

## I. FACTS

Bar Counsel initiated disciplinary proceedings against Kim Hallmark, a solo

that considered the evidence.

practitioner admitted to the District of Columbia Bar in 1993, based on five different claims of misconduct. The first case arose out of respondent's submission of a CJA voucher to the Superior Court for her representation in 1993 of Antonio Jackson, the complaining witness in an attempted-murder case. Respondent committed several errors in submitting her voucher, including filing the voucher late[2] and claiming fees in an amount substantially above the statutory limit without providing supporting information to the court.[3] Judge Henry H. Kennedy, Jr., who was the presiding judge in the matter, declined to approve respondent's requested payment as submitted and asked that she provide further written explanation for the claims made in her voucher within two weeks. Respondent, however, did not comply with that request and never provided any further explanation to Judge Kennedy. By letter dated February 1, 1996, Judge Kennedy informed then Superior Court Chief Judge Eugene N. Hamilton that he would not approve payment of respondent's voucher. Judge Kennedy also disapproved payment of a voucher submitted by Darryl Smith, respondent's investigator, because the services were not pre-authorized and made improper or irregular requests for payment. In his order denying payment on Ms. Hallmark's voucher, Judge Kennedy "question[ed] the bona fides of Ms. Hallmark's affirmation of the 'truth and correctness' of her statements on her voucher" and stated that "he would report the matter to Bar Counsel because he had reason to believe that respondent had violated the Rules of Professional Conduct."

In the second case that formed the basis of Bar Counsel's proceedings, respondent represented Eugene Franklin, a District of Columbia correctional officer who retained respondent in 1995 to file a medical malpractice claim. At a hearing before a committee of the Board on Professional Responsibility, Mr. Franklin recounted that respondent never filed a lawsuit on his behalf, despite the fact that he had given her a total of $925 for various filing and representation fees. According to Mr. Franklin, he attempted to communicate with respondent between September 1995 and March 1996, but found that the telephone number he had for respondent had been disconnected. Even when he located a new telephone number for her, she did not respond to a number of messages that he left inquiring about his case. Although in January 1996 respondent consulted with a medical expert who had examined Mr. Franklin for purposes of evaluating his proposed malpractice action, she did not communicate the expert's opinion that there had been no malpractice nor his recommendation that he see another physician, until March or April. In May of 1996, Mr. Franklin sent a certified letter to respondent, requesting that she return the fees he had paid as she had failed to

---

**2.** A CJA voucher must be filed within the later of 60 days of the conclusion of the case or 30 days subsequent to the issuance of the voucher. The Board found that respondent's voucher was due on January 19, 1995. Respondent, however, did not submit her voucher until July 25, 1995.

**3.** Respondent sought $6,404.13 for her representation of Mr. Jackson. The CJA statute limits compensation for representation in a felony matter to $2,450 unless waived by the court. *See* D.C.Code § 11–2604(b)(2) (2001).

Superior Court rules provide that any voucher requesting more than the statutory amount must be submitted with a supporting letter from the claimant to the presiding judge. The voucher is then transmitted to the Chief Judge of the District of Columbia Superior Court with a recommendation by the presiding judge. Although respondent requested a waiver of the due date, she did not provide a letter in support of her request for compensation over the statutory amount.

resolve the matter, file suit, or maintain communication with him. When respondent did not comply or answer his letter, Franklin filed a complaint with Bar Counsel.[4]

The third case involved respondent's representation in 1995 of Jenise I. Patterson, who sought assistance in expunging a 1982 misdemeanor conviction for carrying a dangerous weapon. After agreeing to represent Ms. Patterson, respondent did not communicate with her client regarding her case for approximately a year and a half. Ms. Patterson eventually had the opportunity to question respondent about the status of her case when she happened upon respondent on a corner near the building where she resided. Respondent told Ms. Patterson that the matter was "done." Unclear about what that remark meant, Ms. Patterson tried several times to contact respondent to obtain a more complete explanation. According to Ms. Patterson, she tried but was unable to reach respondent. Despite the fact that the motion to expunge was denied in 1996, respondent did not deliver a copy of the court's order to Ms. Patterson until 1998. By that time, Ms. Patterson had already filed a complaint with Bar Counsel.

The fourth case involved respondent's representation of Troy Bedney, a Lorton prisoner, who retained her to explore a personal injury claim. After respondent investigated Mr. Bedney's allegations that he had endured injuries while riding in a prison van, she concluded that Mr. Bedney had suffered virtually no injuries and that his claim had no merit. Respondent, however, failed to inform her client that she was not going to pursue his claim. Mr.

Bedney filed a complaint with Bar Counsel claiming she was unresponsive. In a letter responding to the complaint filed by Mr. Bedney, respondent admitted that she "did not communicate [her] withdrawal to Mr. Bedney," and conceded that she should have done so in writing.

The fifth case arose out of respondent's representation in 1996 of Donna Roberson in a landlord-tenant dispute before the Superior Court of the District of Columbia. Ms. Roberson had paid respondent a flat fee of $1,000 to appear in court on her behalf and to prepare a motion to dismiss the suit brought against her. Respondent entered her appearance with the court and requested a continuance, which the trial court granted. Thereafter, because respondent did not meet with Ms. Roberson concerning the matter, Ms. Roberson felt compelled to submit a *pro se* appeal on an issue related to the landlord-tenant dispute. Ms. Roberson sent a letter to respondent terminating her services and demanding the return of the $1,000 retainer. Respondent never answered the letter. Ms. Roberson filed a *pro se* motion for a continuance in the landlord-tenant case, informing the trial court that she was seeking new counsel as respondent had effectively withdrawn from the case. Respondent then filed an emergency motion to withdraw from representing Ms. Roberson because "no retainer agreement or fee has been forthcoming" and her client had failed to respond to her numerous contacts. The trial court denied respondent's request to withdraw unless Ms. Roberson decided to proceed *pro se* or obtain new counsel. The court also denied Ms. Roberson's motion for a continuance of the trial date. Thereafter, Ms. Roberson retained

---

**4.** Before the hearing committee, respondent asserted that she had agreed only to investigate Franklin's claim, not to file a suit, and that she had informed Franklin that he would be responsible for any costs incurred in the matter. Respondent said she had offered to return $600 to Franklin, but that he refused the offer unless it was tendered by certified check.

new counsel, but never informed respondent that she had done so prior to the trial date. Respondent appeared in court on the trial date, but because new counsel was present, did not participate in Ms. Roberson's trial. Respondent never returned any portion of the $1,000 fee to Ms. Roberson, and Ms. Roberson filed a complaint with Bar Counsel.

In addition to the above client matters, the Board also considered respondent's failure to cooperate with Bar Counsel's investigation of the complaints filed by Franklin and Patterson. Starting in 1996, Bar Counsel sent at least four letters and a subpoena to respondent requesting that she respond to Franklin's complaint. Hallmark did not respond to any of these letters from Bar Counsel nor to an order from the Board ordering her to respond to the Franklin complaint within 10 days. Similarly, in the Patterson case, respondent failed to answer numerous requests from Bar Counsel for a response to the complaint filed against her and an order from the Board directing her to do so within 10 days. Hearings on the various complaints were held in 1998 and, with limited exceptions, respondent had still not provided a response to the requests. Respondent alleged that she had different addresses during the period when the requests were mailed, and had not received them. The Board did not accept respondent's explanation, however, as none of the documents was returned by the postal service as undeliverable.

The Board concluded that Hallmark's failure to keep her clients (Franklin and Patterson) reasonably informed of the status of their cases, to return their calls and to comply promptly with their reasonable requests for information violated Rule 1.4(a). Respondent was also found to have violated Rule 1.15(d) in the Franklin and Roberson cases by failing to promptly return unearned fees when her representation of those clients was terminated. The Board found several violations of Rule 1.16(d): failing to notify Mr. Franklin in a timely fashion of her decision not to pursue his case and not returning an unincurred filing fee of $125 he had advanced until the second day of the hearing in this case; failing to return an advanced unearned legal fee to Ms. Roberson; and failing to timely inform Mr. Bedney that she had decided not to pursue his case any further. In addition, the Board found that respondent's failure to respond to Bar Counsel's and the Board's requests for information violated Rule 8.4(d) and Rule XI, Sections 2(b)(3) and (4). For these combined violations, the Board recommends a ninety day suspension with proof of fitness before reinstatement and restitution to two of respondent's former clients, Franklin and Roberson.

## II. ANALYSIS

■■■ We accept the findings of fact made by the Board on Professional Responsibility unless they are unsupported by substantial evidence of record, and will adopt the recommendations of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted. *See* D.C.App. R. XI, § 9(g)(1). The Board's recommended sanction comes to the court with a strong presumption in favor of its imposition. *See In re Lopes,* 770 A.2d 561, 567 (D.C.2001) (citing *In re Goffe,* 641 A.2d 458, 464 n. 7 (D.C.1994)). " 'Generally speaking, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed.' " *Id.* (quoting *Goffe,* 641 A.2d at 463–64).

### A. The Respondent's Exception

Respondent argues, first, that the charge that she violated Rules 1.15(d) and

1.16(d) in the Roberson matter should be dismissed because Bar Counsel failed to prove by clear and convincing evidence that she violated those rules in her representation of Ms. Roberson. She also claims that the charges are duplicative as they are based on the same conduct. Second, respondent argues that the Board's findings that she violated Rule 1.4(a) in her handling of the Franklin and Patterson matters are not supported by sufficient evidence of record. Finally, respondent contends that the Board's recommendation that she be suspended for ninety days with proof of fitness before reinstatement is inconsistent with sanctions imposed for similar violations.

### 1. *Rule 1.16(d) and 1.15(d) violations—Roberson matter*[5]

■ Rule 1.16(d) states that:

[i]n connection with any termination of representation, a lawyer shall take timely steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by Rule 1.8(i).

Respondent argues that the rule requires the return of *unearned* portions of fees advanced to a client upon termination of representation, and that she performed services for Roberson valued in excess of $1,000. As the Board correctly noted, that

argument ignores that respondent agreed, in writing, to provide her services for a flat fee, not on an hourly basis, for the performance of two discrete tasks: to appear at a hearing on April 5, 1996, and to prepare a motion to dismiss the proceeding. Although respondent and Roberson disagree as to why respondent did not prepare the motion to dismiss, it is undisputed that Roberson paid respondent $1,000 pursuant to their agreement; that respondent did not prepare and file a motion to dismiss and that respondent never returned any portion of the $1,000 fee to Roberson. Even assuming that respondent was entitled to withhold a portion of the retainer fee in compensation for appearing before the court, this does not justify the withholding of the entire fee amount as it is clear that she performed only part of the work. Thus, there is substantial evidence to support the Board's findings and conclusion that respondent violated Rule 1.16(d) in the Roberson matter.[6]

### 2. *Rule 1.4(a) violations*

■ Respondent also contests the Board's findings that her conduct in the Franklin and Patterson cases violated Rule 1.4(a), which provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Respondent contends that the hearing committee could not have found, by clear and convincing evidence, that she had not reasonably communicated with either

---

**5.** Although the Board also found other violations of Rules 1.15(d) and 1.16(d), respondent only challenges the finding that she violated them in the Roberson matter.

**6.** The Board found that respondent's conduct also violated Rule 1.15(d). Respondent argues that to charge the same conduct under both rules is duplicative. Neither respondent

nor Bar Counsel address whether the failure to return unearned fees upon termination of a representation is covered by the language of Rule 1.15(d) as well as Rule 1.16(d). Nor do we think it is necessary to address the issue at this juncture as it has no impact on the recommended sanction.

Mr. Franklin or Ms. Patterson concerning their cases. We disagree.[7]

As to the Franklin matter, the hearing committee found that respondent had violated Rule 1.4(a) by failing to respond to Mr. Franklin's calls regarding the status of his medical malpractice case. Mr. Franklin testified that between September 1995 and March 1996 he had attempted to communicate with respondent, but found that the telephone number he had for respondent had been disconnected and, although he eventually located a new telephone number for her, did not receive any response to a number of messages that he left inquiring about his case. Respondent denied that she had failed to keep Mr. Franklin reasonably informed of the status of his case. According to respondent, after consulting with a medical expert in January of 1996 and determining there was no evidence of medical malpractice as alleged by Mr. Franklin, she discussed with him in either late January or early February 1996 that there were problems with the proposed lawsuit. She then met with Mr. Franklin at her office in March of 1996 and reiterated her belief that she could not go forward with his case. In its report, the Hearing Committee said it "believed" Mr. Franklin's testimony that respondent "did receive [phone] messages and communications from her client and, for whatever reason, simply did not respond," and concluded that "by her own testimony, [respondent] conferred with the examining expert in January 1996, but did not respond to her client until at least late March or April 1996." In its Report, the

Board based its finding that respondent had violated Rule 1.4(a) on her failure to communicate to her client that she would not be filing suit on his behalf until late March or April 1996, and on her delay in responding until the following year, to the client's request for a return of the fee.[8]

Assessing the credibility of witnesses is a matter left to the factfinder, which in disciplinary proceedings is the hearing committee. See In re Asher, 772 A.2d 1161, 1172 (D.C.2001). Lawyers have an obligation not only to reasonably communicate with their clients about pending matters but also to let them know if they cannot or will no longer continue to pursue their cases. See In re Santana, 583 A.2d 1011–13 (D.C.1990) (per curiam). Respondent failed to meet this important obligation, warranting a finding of a violation of Rule 1.4(a) in her representation of Mr. Franklin.

In the Patterson case, respondent contends that the hearing committee and the Board wrongfully rejected her testimony regarding the communications she had with Ms. Patterson, without reason or explanation. Again, we cannot agree with respondent that the hearing committee's findings were not supported by substantial evidence of record. Ms. Patterson had retained respondent in April of 1995 to represent her in an attempt to expunge a misdemeanor conviction. In finding that respondent violated Rule 1.4(a) in her representation of Ms. Patterson, the committee found "no evidence that respondent communicated to her client anything about

---

7. Although respondent raised her challenge to the Rule 1.4(a) violations for the first time at oral argument, we nevertheless address the issue as the Board relied on these violations to justify its recommended sanction.

8. Neither the Hearing Committee nor the Board expressly discredited respondent's testimony that she had alerted Mr. Franklin to

"problems" with his case in late January or February 1996. But the Hearing Committee expressly credited Mr. Franklin's testimony. The findings of both the Hearing Committee and the Board imply that they resolved any inconsistencies in favor of Mr. Franklin's version.

the actions she was taking on her behalf, or the status of the matter, until August 1996, nearly a year and a half after her engagement by complainant." Upon our review of the record, including the hearing transcript containing respondent's testimony, we too cannot find any indication that respondent presented any explanation, excuse or even an attempt to deny her failure to communicate with Ms. Patterson concerning the status of a motion to expunge the conviction between the time the motion was filed and August of 1996, when respondent met Ms. Patterson on a street comer and told her that the matter was "done." Respondent did claim at the hearing before the committee that she had tried to contact Ms. Patterson from September of 1996 through January of 1997, after she received a judicial order denying the motion to expunge, and had left a message at Ms. Patterson's last known number to no avail. However, this is not the time frame that concerned the Hearing Committee, whose determination that Rule 1.4(a) had been violated rested specifically on respondent's undisputed failure to communicate with her client for a year and a half, before August of 1996.

The guiding principle for evaluating conduct under Rule 1.4(a) "is whether the lawyer fulfilled the client's 'reasonable ... expectations for information.'" *In re Schoeneman,* 777 A.2d 259, 264 (D.C.2001) (citations omitted). To meet that expectation, a lawyer not only must respond to client inquiries but also must initiate communications to provide information when needed. *See* Rule 1.4(a) cmt. 1. Based on the evidence presented, we agree that respondent's failure to communicate with Ms. Patterson about the status of her case over a span of a year and a half did not fulfill the client's reasonable expectations for information, and constituted a violation of Rule 1.4(a).

## B. Bar Counsel's Exception

Bar Counsel excepts to the Board's finding that respondent did not violate Rule 8.4(d) in her submission of a CJA voucher form. Rule 8.4(d) provides that it is professional misconduct for an attorney to "[e]ngage in conduct that seriously interferes with the administration of justice." Bar Counsel maintains that respondent's conduct "seriously interfered" with the justice system because her submission of an untimely and inaccurate voucher burdened the courts' administrative staff and the presiding judge. Bar Counsel contends that respondent's decision to ignore the presiding judge's inquiries concerning the CJA voucher further justifies a finding that she interfered with the justice system. The Board found that although troubling and negligent, respondent's conduct was not so serious an interference with the justice system as to constitute a violation of Rule 8.4(d), and was attributable simply to her inexperience with the CJA system and reflected poor personal judgment. We agree with the Board that respondent's conduct did not violate Rule 8.4(d).

To establish a violation of Rule 8.4(d), Bar Counsel must prove by clear and convincing evidence that (1) the attorney either took improper action or failed to take action when she should have acted; (2) the conduct involved bears directly on a case in the judicial process with respect to an identifiable case or tribunal; and (3) the conduct taints the judicial process in more than a *de minimis* way, meaning that it must "at least potentially impact upon the process to a serious and adverse degree." *In re Hopkins,* 677 A.2d 55, 60–61 (D.C.1996) (citation omitted). The Board found that Bar Counsel failed to prove by clear and convincing evidence that respondent's conduct impacted the ad-

ministration of justice in more than a *de minimis* way. Generally, we have found a Rule 8.4(d) violation upon a showing of more egregious conduct than the one at bar. *See, e.g., In re Drew,* 693 A.2d 1127 (D.C.1997) (per curiam) (attorney's deliberate and wrongful refusal to file appeal resulted in obstruction of client's right to appellate review); *In re Goffe,* 641 A.2d at 459 (attorney's fabrication and alteration of evidence in two cases held to seriously and adversely impact the judicial process); *In re Delate,* 598 A.2d 154, 156–57 (D.C. 1991) (per curiam) (failing to appear at a hearing and to file required accountings adversely impacted on the judicial process by placing client's case in jeopardy); *In re Sandground,* 542 A.2d 1242 (D.C.1988) (per curiam) (assisting client to conceal assets in divorce case); *In re Reback,* 513 A.2d 226 (D.C.1986) (en banc) (forging client's signature on complaint). Contrasting this type of conduct, where there is intentional disregard for the effect that an action may have on judicial proceedings or the client's cause, what we have here is a deficient request for compensation—which the Hearing Committee found to be the result of negligence, not fraud. We do not doubt that respondent's conduct placed an unnecessary burden on the administrative processes of the Superior Court and on the presiding judge, but her untimely submission of an obviously deficient voucher did not seriously and adversely affect the administration of justice, or her client. As

the Board points out, if anything, respondent's decision to ignore the judge's request for more information concerning her services has proven costly to her as she was not compensated for her representation of Mr. Jackson. *Cf. In re L.R.,* 640 A.2d 697 (D.C.1994) (Rule 8.4(d) violated where CJA-appointed attorney agreed to file a motion in return for payment from defendant personally, in violation of D.C.Code § 11–2606(a); court found that the conduct was "presumptively prejudicial" because it would likely instill belief in defendant that quality of representation will depend on personal payment).

### C. Sanction

■ The Board on Professional Responsibility recommends that respondent be suspended from the practice of law for ninety days, with proof of fitness prior to reinstatement. In addition, the Board suggests that respondent be required to make restitution in the amount of $700 to Donna Roberson[9] and $475 to Eugene Franklin[10] with interest at the rate of 6% from June 1996 in the Roberson matter and from April 1997 in the Franklin matter.

Respondent requests that this court impose no more than a sixty day suspension and argues that the recommended proof of fitness requirement before reinstatement is unwarranted and would result in inconsistent dispositions for comparable conduct.[11] In particular respondent takes is-

---

**9.** The Board concluded that the flat fee retainer agreement did not give any indication as to how the fee of $1,000 should be apportioned between the two tasks that respondent agreed to perform. It adopted the Hearing Committee's determination that respondent's legal services in connection with the April 5, 1996 hearing represented an earned fee of $300, leaving $700 for the legal services in connection with the motion to dismiss that were never rendered.

**10.** The Board took into account the fact that respondent testified that she had concluded that $600 should be returned to Mr. Franklin and that she had offered to pay him that amount in April 1997. Although respondent did not pay him that amount prior to the hearing, she did return the $125 pre-paid filing fee to Franklin on the second day of the proceedings.

**11.** Respondent's argument focuses primarily on her opposition to the Board's recommendation of proof of fitness prior to reinstate-

sue with the Board's comparison of her case with that of the respondent in *In re Ryan,* 670 A.2d 375 (D.C.1996). In that case, we imposed a four month suspension and required a showing of fitness prior to reinstatement. *Id.* at 381.[12] According to respondent, *Ryan* is distinguishable from her case as it involved a violation of eight Rules of Professional Responsibility and several aggravating factors, the key one being that the attorney there missed many important deadlines, which prejudiced her clients, whereas in this case she did not miss any deadlines or engage in conduct that intentionally prejudiced her clients. Respondent insists that her case is more analogous to that of the respondent in *In re Pullings,* 724 A.2d 600 (D.C.1999) (per curiam), where the Board recommended a sixty day suspension to be stayed for a one-year period of supervised probation, without proof of fitness requirement, despite the fact that Pullings had committed more serious violations than respondent in this case.

 In determining whether "proof of fitness" is proper in a disciplinary proceeding, we consider

(1) the nature and circumstances of the misconduct for which the attorney was disciplined; (2) whether the attorney recognizes the seriousness of the misconduct; (3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones; (4) the attorney's present character; and (5) the attorney's present qualifications and competence to practice law.

*Lopes,* 770 A.2d at 570 (internal citations omitted). Based on the several instances of misconduct in five separate matters involving four different clients, that in two of those cases respondent intentionally avoided submitting responses to the charges brought by Bar Counsel and failed to comply with orders of the Board, and that respondent has not returned any portion of the $1,000 fee received from Ms. Roberson, despite the fact that services have not been rendered in accordance with the written agreement between them, we think that her reinstatement should be conditioned on showing fitness to continue practicing law in the District.

---

ment and cites to no cases for her contention that a ninety-day suspension is not warranted in this case. We conclude that a ninety-day suspension would be reasonable in light of the sanction imposed in comparable cases. *See, e.g., In re Ryan,* 670 A.2d 375, 381 (D.C.1996) (requiring a four-month suspension and proof of fitness for pattern of neglect involving five undocumented aliens); *In re Lyles,* 680 A.2d 408 (D.C.1996) (per curiam) (imposing a six-month suspension with fitness requirement for neglect of three clients and conduct prejudicial to administration of justice); *In re Landesberg,* 518 A.2d 96 (D.C.1986) (per curiam) (sixty-day suspension for keeping unearned fees, neglecting appeal, and misleading client).

12. In *Ryan,* the respondent was found to have committed numerous violations in connection with the representation of five clients in immigration matters over a period of two years. *See Ryan,* 670 A.2d at 378. The Board deter-

mined that Ryan had deliberately neglected client matters, habitually ignored pertinent deadlines in labor certification proceedings, and failed to return client's files after the clients had terminated her services. *See id.* The Board also took note of several aggravating factors found by the Hearing Committee in recommending that the respondent be suspended from the practice of law for four months and show proof of fitness before reinstatement, including "respondent's misrepresentations to the Office of Bar Counsel during its investigations, respondent's defiant attitude toward the disciplinary system, her lack of understanding and appreciation of her ethical and professional obligations to her clients, and the fact that the clients of whom she took advantage were particularly vulnerable persons who spoke minimal English, were unaware of their legal rights, and were unfamiliar with the American system." *Id.*

■ We agree with the Board that respondent's conduct in this case is sufficiently analogous to *Ryan* to warrant a requirement that she prove fitness to practice law prior to reinstatement. One of our chief concerns in *Ryan* was "the manifest failure on the part of respondent to appreciate her ethical responsibilities." *Ryan*, 670 A.2d at 381. In this case, we are similarly concerned that respondent does not fully appreciate the ethical responsibilities and obligations that the practice of law requires, as she has shown not only a pattern of neglect in her representation of a number of clients, but intentionally has refused to return her client's money. Moreover, we are especially cognizant of the fact that, unlike in *Ryan*, respondent's failure to cooperate with Bar Counsel and the Board in this case were not only noted, but culminated in findings of violations of Rule 8.4(d) and Rule XI, § 2(b)(3) and (4). Where a "respondent evinces persistent disregard for the disciplinary process and continued refusal to cooperate with Bar Counsel and the Board," a requirement of fitness before reinstatement is appropriate. *In re Smith*, 649 A.2d 299, 300 (D.C.1994) (per curiam).

We disagree with respondent's contention at oral argument that, in requiring that she prove her fitness to practice law prior to reinstatement, we are in effect treating young, inexperienced lawyers more harshly than we would more experienced and established attorneys. The sanction we impose is not related to the perhaps understandable lapses of an inexperienced attorney, but reflects that respondent's misconduct has been prevalent throughout her relatively short legal career.[13] In *Pullings*, where no proof of fitness before reinstatement was required, the respondent had been a long-standing member of the bar whose misconduct in three client cases occurred after almost 20 years of practice with an unblemished record. In this case, respondent's misconduct involved four clients, and began within two years of her entry into the Bar in 1993. At the time of the misconduct at issue in this proceeding, respondent was already under investigation by Bar Counsel for similar conduct, failing to surrender a client's file in a timely manner, which resulted in an informal admonition in 1996. As we explained in *In re Steele*, 630 A.2d 196, 201 (D.C.1993), our concern is that respondent's "'resumption of the practice of law will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive to the public interest'" (quoting *In re Roundtree*, 503 A.2d 1215, 1217 (D.C. 1985)). In the absence of experience that respondent can practice in conformance with the rules, the evidence to the contrary requires this additional safeguard.[14]

Accordingly, it is hereby ORDERED that Kim E. Hallmark is suspended from

13. We also note that, as discussed in the previous section, the Board did not find a violation of Rule 8.4(d) attributing respondent's submission of a deficient CJA voucher, in part, to inexperience and lack of familiarity with the CJA system.

14. We would hope that notwithstanding respondent's position on appeal, she has been advised by the Board's Report recommending a fitness requirement to take steps and monitor her performance so that she will be in a position to satisfy the fitness requirement upon completion of the ninety-day suspension. Similarly, we encourage Bar Counsel— as we have in the past, *see In re Berger*, 737 A.2d 1033, 1045–46 & n. 20 (D.C.1999) and *Steele*, 630 A.2d at 202 (Farrell, J., concurring)—to consider whether in appropriate cases there might be ways to expedite assessment of reinstatement petitions with fitness requirements so that the period of suspension is not effectively extended beyond what is imposed by the court.

the practice of law in the District of Columbia for ninety days with reinstatement conditioned upon a showing of fitness to practice law and proof of restitution as directed by the Board on Professional Responsibility.

*So ordered.*