### In re Jacob Q. OWUSU, Respondent.

### A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 442164).

### No. 04–BG–916.

District of Columbia Court of Appeals.

Argued Oct. 20, 2005.
Decided Nov. 10, 2005.

Elizabeth A. Herman, Senior Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel at the time the brief was filed, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, for the Board on Professional Responsibility.

Before TERRY, FARRELL, and REID, Associate Judges.

FARRELL, Associate Judge:

The Board on Professional Responsibility (the Board), having found that respondent Jacob Q. Owusu committed serious neglect of an immigration matter, has recommended his suspension from the practice of law in the District of Columbia for sixty days, and that he be ordered to pay restitution and required to prove fitness to practice as a condition of reinstatement. Owusu has not participated in these disciplinary proceedings at any stage. Bar Counsel, for her part, excepts only to the Board's recommendation that an additional charge of violation of Rule 8.4(d), based partly on Owusu's failure to answer the disciplinary complaint underlying the neglect allegations, be dismissed.[1] Although Bar Counsel seeks no additional sanction for the alleged Rule 8.4(d) misconduct, she asks us to review the Board's finding of no violation because "the Court's interpretation of Rule 8.4(d) is critically important to Bar Counsel's investigations and the disciplinary system" (Br. for Bar Counsel at 2). For the reasons that follow, we conclude that there was no violation of Rule 8.4(d) here, and accept the Board's recommendation entirely.

A hearing committee and the Board both found that Owusu had violated the following Rules of Professional Conduct: 1.1(a) (duty of competent representation); 1.1(b) (duty to serve client with skill and care); 1.3(a) (duty of zealous and diligent representation); 1.3(b)(1) (intentional failure to pursue client's lawful objectives); 1.3(b)(2) (intentional prejudice or damage to client); and 1.4(a) (duty to keep client reasonably informed about the status of the matter and promptly comply with reasonable requests for information). The violations all stemmed from Owusu's actions and inactions beginning in 1997, when he was retained by Eugene Ajayi to represent him in seeking an adjustment of Ajayi's immigration status following his marriage to a United States citizen. Among other things, Owusu filed the application for adjustment of status in the wrong place, resulting in its rejection by the immigration authorities, and failed to appear at a key interview between immigration officials and Ajayi. Indeed, after meeting with Owusu before that interview and paying him the balance of the retainer, Ajayi never again succeeded in reaching him.

As stated earlier, Owusu has not appeared in these disciplinary proceedings and, accordingly, has filed no exceptions to the Board's findings or recommendation. The record, in any event, contains abundant support for the Board's conclusion that he engaged in serious and damaging neglect of his responsibilities to Ajayi, and for its recommendation—concurred in by Bar Counsel—of a sixty-day suspension, together with a requirement that he pay $3,500 in restitution and show fitness before reinstatement. *See, e.g., In re Perez,* 828 A.2d 206 (D.C.2003) (per curiam) (ordering suspension for sixty days with reinstatement conditioned on showing of fitness "for protracted neglect and intentional conduct that resulted in prejudice ... to a vulnerable client"). The sole issue in dispute is whether the Board correctly determined, contrary to Bar Counsel's (and the Hearing Committee's) position, that Owusu had not also violated Rule 8.4(d) by his combined failure to respond to Bar Counsel's inquiry into his representation of Ajayi and failure to inform the Bar of his current address. Bar Counsel's acceptance of the sanction recommended by the Board makes it

---

**1.** Rule 8.4(d) of the District of Columbia Rules of Professional Conduct states that "[i]t is professional misconduct for a lawyer to ... [e]ngage in conduct that seriously interferes with the administration of justice."

strictly unnecessary for us to consider that question,[2] but we proceed nonetheless to answer it given the importance Bar Counsel attaches to the issue.

In early March 2002, Ajayi complained to Bar Counsel about Owusu's conduct. On March 21, 2002, Bar Counsel opened an investigation by mailing Owusu, at his most recent address reflected in records of the D.C. Bar, a letter and a copy of Ajayi's complaint and a request that he respond. The letter was returned to Bar Counsel with the notation "moved, left no forwarding address." Bar Counsel also hired a process server who tried unsuccessfully to reach Owusu on repeated occasions. All subsequent motions, letters and pleadings that were mailed to him, at all addresses known to Bar Counsel, were returned as undeliverable. As of the date of the disciplinary hearing in 2003, Bar Counsel had not received a response to the misconduct allegations from Owusu.

■ In these circumstances, Bar Counsel and the Board agree that Owusu did not receive actual notice of the investigative inquiry. *See, e.g.,* Br. for Bar Counsel at 7.[3] Bar Counsel nevertheless charged him with violating Rule 8.4(d) by failing to respond to the inquiry and by failing to maintain a current address with the D.C. Bar, as required by D.C. Bar R. II §§ 2(1) and 2(4).[4] Bar Counsel conceded to the Board that a Rule 8.4(d) charge "may not be appropriate" if an attorney "inexplicably" fails to receive a Bar Counsel letter of inquiry, provided he has maintained current address information with the Bar. But if an attorney fails to provide the Bar with

**2.** *See, e.g., In re Corizzi,* 803 A.2d 438, 439 n. 1 (D.C.2002) (court declines to address Bar Counsel's exceptions to Board's failure to find additional ethical violations "because [discipline] is warranted, as Bar Counsel agreed, based simply on the violations that were found by the Board.").

**3.** At oral argument, Bar Counsel hedged slightly on the concession of no actual notice in her brief by pointing to the process server's affidavit in the record which states that individuals (including a family member of Owusu's) present at various addresses at which service was attempted had "not been forthcoming as to [Owusu's] whereabouts"—thus suggesting purposeful evasion by Owusu. The Hearing Committee, however, did not mention or evaluate this evidence in its recommended finding of a Rule 8.4(d) violation, which rested solely on Owusu's combined failure to respond to the investigation and to update his address. In any event, that single affidavit statement would not constitute clear and convincing evidence that Owusu had deliberately evaded knowledge of the inquiry.

**4.** D.C. Bar R. II, § 2(1), "Periodic Registration of Attorneys," provides in pertinent part:

Every attorney who engages in the practice of law within the District of Columbia ... shall on or before July 1 of every year file with the Secretary of the Bar a registration statement setting forth his or her current residence and office addresses, telephone number, other state jurisdictions in which he or she is admitted to practice including date of admission, and such other information as the Court may from time to time direct. In addition to such registration statement, every attorney shall file a supplemental statement with the Secretary of any change in the information previously submitted within thirty days of such change.

D.C. Bar R. II, § 2(4) provides in pertinent part:

An attorney who ... is not engaged in practice ... shall advise, in writing, the Secretary of the Bar that he desires to assume inactive status and to discontinue the practice of the law. Upon the filing of such notice, that attorney shall no longer be eligible to practice law but shall continue to file registration statements for 5 years thereafter in order that he may be located in the event any complaint is made about his conduct while he was engaged in practice.

Rule II, § 2(3) further provides for the summary suspension from practice of an attorney "who fails to file any registration statement or supplement thereto in accordance with the requirements of [Rule II, § 2(1)] above."

an accurate address, Bar Counsel argued (and argues to the court) that the attorney has created a situation that keeps him ignorant of a disciplinary investigation, and in that case his failure to respond to Bar Counsel violates Rule 8.4(d) whether or not he was aware of the investigation. The Board rejected this application of Rule 8.4(d), and so do we.

■ "[A]n attorney's failure to respond to Bar Counsel's inquiries in an investigation of a disciplinary complaint . . . violates Rule[ ] . . . 8.4(d)." *In re Burnett,* 878 A.2d 1291, 1292 (D.C.2005) (per curiam). *See also In re Beller,* 802 A.2d 340 (D.C. 2002) (per curiam); *In re Delaney,* 697 A.2d 1212, 1214 (D.C.1997); *In re Siegel,* 635 A.2d 345, 346 (D.C.1993) (per curiam). In *Burnett,* for example, the attorney was found to have violated the rule because of his "total failure to respond or cooperate with Bar Counsel in the investigation of three other disciplinary complaints" against him. 878 A.2d at 1292; *see also Siegel,* 635 A.2d at 346 (attorney "sought to avoid his responsibilities by deliberate evasion of Bar Counsel and his agents"). As *Siegel* illustrates, however, in each of the cited cases the respondent-attorney had been served personally with the complaint and/or orders of the Board, and thereafter failed to respond or cooperate with the investigation. *See Burnett,* 878 A.2d at 1292 ("respondent was personally served"); *Beller,* 802 A.2d at 340 (respondent "admitted [her] failure to respond to repeated inquiries from Bar Counsel"; no apparent claim of failure to receive notice); *Delaney,* 697 A.2d at 1213 ("the letter and the complaint were personally served on [r]espondent by a process server"). None of our decisions supports a violation of the rule for failure to respond when the attorney did not receive notice of the investigation.

Bar Counsel does not contend otherwise, which is why her argument for a Rule 8.4(d) violation rests on the additional fact that Owusu failed to keep the Bar informed of his current address. Quoting the Hearing Committee, Bar Counsel states that "where, as here, an attorney disappears and fails to provide the Bar with an accurate address, he has *intentionally* created a situation that would keep him ignorant of a Bar investigation" (Br. for Bar Counsel at 13); *see id.* (Owusu "created the situation *so that* he would not know of Bar Counsel inquiries") (emphases added). However, as the Board points out, this assertion of purposeful wrongdoing is unsupported by record evidence. Owusu's neglect of the immigration case began in September 1998 when he failed to appear for Ajayi's interview, and the client was unable to locate him thereafter. Owusu subsequently updated his address and telephone number on November 2, 1998, in the last registration statement he filed with the D.C. Bar. By the time Bar Counsel opened a disciplinary investigation and tried to forward Ajayi's complaint to Owusu in 2002, he had not filed registration statements with the Bar for over three years, for reasons unexplained in the record. Given this sequence of events, the assertion that Owusu intentionally kept his current address from the Bar to avoid either an actual or incipient investigation by Bar Counsel is wholly speculative. In its report, the Board made that point by asserting that, while "there may be circumstances under which it would be appropriate to impute knowledge of Bar Counsel['s] inquiry to a . . . respondent" who has not disclosed his address, that would be unfair "under the facts presented here" where the reasons for the attorney's failure to update his address are unknown. We agree.

Imputing knowledge of Bar Counsel's inquiry to Owusu in these circumstances

would effectively transform a violation of an administrative Bar rule into the more serious violation of failure to respond to Bar Counsel under Rule 8.4(d), without any evidence of purpose linking the failure to register and failure to respond. Our cases defining a Rule 8.4(d) violation prohibit that course. The leading decision is *In re Hopkins*, 677 A.2d 55 (D.C.1996), in which the court began by observing that the rule—more precisely, its predecessor rule, which did not differ significantly in content from Rule 8.4(d), *see id.* at 56 n. 1—is generally meant " 'to encompass derelictions of attorney conduct considered reprehensible to the practice of law,' " *id.* at 59 (quoting *In re Alexander*, 496 A.2d 244, 255 (D.C.1985)), and is "not so broad as to encompass any and all misconduct by an attorney." *Id.* We explained in *Hopkins* that to establish a violation of Rule 8.4(d) Bar Counsel must prove by clear and convincing evidence: (1) that the attorney acted improperly in that he either "[took] improper action or fail[ed] to take action when ... he or she should [have] act[ed]"; (2) that the conduct involved "bear[s] directly upon the judicial process (*i.e.*, the 'administration of justice') with respect to an identifiable case or tribunal"; and (3) that the conduct "taint[ed] the judicial process in more than a *de minimis* way," meaning that it "at least potentially impact[ed] upon the process to a serious and adverse degree." *Id.* at 60–61; *see also In re Hallmark*, 831 A.2d 366, 374 (D.C.2003). In this case the Board was willing to posit, and so do we, that Owusu acted improperly in that he failed to take action when he should have—he failed to comply with the registration requirements of D.C. Bar R. II, § 2. But that inaction, in the absence of evidence that he ignored those requirements deliberately to evade a Bar Counsel inquiry, falls short of meeting the second and third elements of the *Hopkins* test.

D.C. Bar R. II, § 2 sets forth the administrative requirements of Bar membership. Administration of those requirements—including suspension for violation of them—is not vested in judges but in the Board of Governors, elected officials who administer the Bar membership, *see* D.C. Bar R. II, §§ 2 & 6. Ensuring compliance with the requirements is therefore not judicial in nature and does not "bear directly upon the judicial process." [5] *See*, by contrast, *Hopkins*, 677 A.2d at 60 (citing *In re L.R.*, 640 A.2d 697 (D.C.1994)) (misconduct that affects the Criminal Justice Act (CJA) program, which is an integral part of the judicial process of the courts of the District of Columbia, satisfies the second *Hopkins* criterion). At the same time, "an investigation by Bar Counsel *is* ... part of the judicial process," *Hopkins*, 677 A.2d at 61 n. 10 (emphasis added), and Bar Counsel argues that an attorney's failure to maintain a current address hampers its investigative abilities and in that sense bears directly on the process. But this argument is weak factually because Bar Counsel *was* able to successfully prosecute the disciplinary complaint in this case without a response from Owusu. More importantly, as we have seen, Bar Counsel has not shown that Owusu's failure to update his address was at all related to—in the sense that it was intended to impede—the investigation of the Ajayi complaint. Accepting Bar Counsel's argument would thus mean that any failure to update ad-

---

**5.** In a recent case, *Sitcov v. District of Columbia Bar*, No. 05–BG–258, 885 A.2d 289, 2005 D.C.App. Lexis 529 (D.C. October 20, 2005), we similarly held that suspension of an attorney for nonpayment of Bar dues under D.C. Bar R. II, § 6 is an "administrative" act and "is not 'discipline' as contemplated by Rule XI" of the Bar rules. *Id.*, at 298, 2005 D.C.App. Lexis 529 at *19.

dress information potentially violates Rule 8.4(d) if Bar Counsel later opens an investigation and cannot reach the attorney. That is not what *Hopkins* meant, we believe, by wrongdoing that bears "directly upon the judicial process ... with respect to an identifiable case or tribunal." *Id.* at 61.

Moreover, assuming that Owusu's failure to register his address related somehow to the judicial process, it did not, without more, taint that process "to a serious and adverse degree." *Id.* As we recognized earlier, the issue would be different if evidence showed that Owusu had willfully blinded himself to Bar Counsel's inquiries; under our decisions, purposefully evading an inquiry by changing address without notifying the Bar would presumptively, and seriously, affect the disciplinary process. But there was no proof of deliberate avoidance on Owusu's part.[6] The more relevant analog in these circumstances is the conduct of the CJA-appointed attorney in *In re Hallmark, supra,* who submitted an untimely and "obviously deficient" voucher for payment to the trial court and then "ignore[d] the presiding judge's inquiries" about the voucher. 831 A.2d at 374–75. We agreed there with the Board's conclusion that this wrongdoing had not "impacted the administration of justice in more than a *de minimis* way," *id.,* explaining:

> Generally, we have found a Rule 8.4(d) violation upon a showing of *more egregious conduct than the one at bar. See, e.g., In re Drew,* 693 A.2d 1127 (D.C. 1997) (per curiam) (attorney's deliberate and wrongful refusal to file appeal re-

sulted in obstruction of client's right to appellate review); *In re Goffe,* 641 A.2d [458,] 459 [(D.C.1994)] (attorney's fabrication and alteration of evidence in two cases held to seriously and adversely impact the judicial process); *In re Delate,* 598 A.2d 154, 156–57 (D.C.1991) (per curiam) (failing to appear at a hearing and to file required accountings adversely impacted on the judicial process by placing client's case in jeopardy); *In re Sandground,* 542 A.2d 1242 (D.C. 1988) (per curiam) (assisting client to conceal assets in divorce case); *In re Reback,* 513 A.2d 226 (D.C.1986) (en banc) (forging client's signature on complaint). Contrasting this type of conduct, where there is *intentional disregard for the effect that an action may have on judicial proceedings* or the client's cause, what we have here is a deficient request for compensation—which the Hearing Committee found to be the result of negligence, not fraud. We do not doubt that respondent's conduct placed an unnecessary burden on the administrative processes of the Superior Court and on the presiding judge, but her untimely submission of an obviously deficient voucher did not seriously and adversely affect the administration of justice, or her client.

*Id.* at 375 (emphases added). In the same way, assuming that Owusu's failure to file registration statements unnecessarily burdened Bar Counsel's ability to investigate his conduct, it still was not, standing alone, conduct "reprehensible to the practice of law," *Hopkins,* 677 A.2d at 59; it was not shown to reflect "intentional disregard for

---

**6.** Bar Counsel acknowledges that "if a lawyer one time forgot to update his address with the Bar ... the interference with the administration of justice would probably be *de minimis,*" but contends that Owusu's successive failures to register "at least together violated Rule 8.4(d)" (Br. for Bar Counsel at 13). Without

proof of Owusu's intent or even knowledge of an investigation into his representation of Ajayi, however, the repeated failure to register no more establishes subversion of Bar Counsel's disciplinary investigation than does a single failure to do so.

the effect [it might have] on judicial proceedings," *Hallmark,* 831 A.2d at 375; and it did not, we conclude, "taint the judicial process in more than a *de minimis* way." *Hopkins,* 677 A.2d at 61.

We therefore dismiss the charged violation of Rule 8.4(d). But in view of the ethical violations Owusu did commit, we suspend him from the practice of law for sixty days and require him to pay restitution to the client in the amount of $3,500 (plus interest at the legal rate of 6%), as well as to demonstrate fitness to practice law before reinstatement.

*So ordered.*