*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-BG-0565

IN RE KENNETH BLACKWELL, RESPONDENT.

A Suspended Member of the Bar
of the District of Columbia
(Bar Registration No. 441413)

On Report and Recommendation
of the Board on Professional Responsibility
(Disciplinary Docket No. 2016-D396)
(Board Docket No. 24-BD-037)

(Argued April 19, 2023                    Decided April 2, 2026)

*Kenneth L. Blackwell*, pro se.

*Hamilton P. Fox, III*, Disciplinary Counsel, with whom *Julia L. Porter*, Deputy Disciplinary Counsel, *Theodore (Jack) Metzler*, Senior Assistant Disciplinary Counsel, and *Jelani C. Lowery*, Assistant Disciplinary Counsel, were on the brief, for the Office of Disciplinary Counsel.

Before EASTERLY, MCLEESE, and SHANKER, *Associate Judges*.

PER CURIAM: In August 2023, this court suspended respondent Kenneth L. Blackwell from the practice of law in the District of Columbia for six months with all but sixty days stayed in favor of three years of probation with conditions recommended by the District of Columbia Board on Professional Responsibility (Board). In suspending Mr. Blackwell, we assumed based on his concession that he

violated D.C. R. Prof. Conduct 3.4(c) by failing to comply with court orders that required him to pay child support, and we concluded that Mr. Blackwell violated D.C. R. Prof. Conduct 8.1(a) by knowingly making a false statement to the Office of Disciplinary Counsel (ODC) during its investigation. *In re Blackwell*, 299 A.3d 561 (D.C. 2023). The matter is now back before us on a motion by ODC to revoke Mr. Blackwell's probation. *See* D.C. Bar R. XI, § 3(a)(7); Bd. Pro. Resp. R. 18.3.

The conditions of Mr. Blackwell's probation required him to begin making monthly child support payments on a schedule that would fully satisfy his obligations by the end of the probation term and to provide ODC with the payment schedule and evidence demonstrating his compliance with the schedule. *Blackwell*, 299 A.3d at 567-68, 574. Mr. Blackwell signed an order provided to him by the Board setting forth the terms of his probation, agreeing that he would "begin to make monthly payments pursuant to a schedule and in an amount sufficient to fully satisfy his child support obligations (including any current arrearage) by the end of the probationary period" and provide ODC with "a statement from the Virginia Department of Child Support Enforcement [VDCSE] showing his compliance with the payment schedule, or evidence showing that he has made the payments required under the schedule," every three months. The Board order stated that if Mr. Blackwell "has not satisfied his child support obligations by the end of the probation, he will be required to serve the stayed portion of the suspension and will be required

to fully satisfy his child support obligations prior to reinstatement."

In June 2024, ODC initiated probation revocation procedures, asserting that Mr. Blackwell had not provided ODC with any statements from the VDCSE showing compliance with a payment schedule and that the VDCSE records showed that Mr. Blackwell had not made any payments to the VDCSE since the suspension order. We referred the matter to an Ad Hoc Hearing Committee pursuant to Bd. Pro. Resp. R. 18.3(c) (and we extended Mr. Blackwell's probation period until the matter is resolved).

After a three-day hearing, the Hearing Committee issued a Report and Recommendation concluding that ODC proved by a preponderance of the evidence that Mr. Blackwell violated the conditions of his probation by virtue of his "near total failure to pay child support." The Hearing Committee recommended that Mr. Blackwell's probation be revoked, that he be suspended from the practice of law for the four months of suspension that was stayed, and that his reinstatement be contingent on his having made all required child support payments to appropriate child support agencies.

Mr. Blackwell filed exceptions and, in a Board Report and Recommendation, the Board adopted the Hearing Committee Report and Recommendation, concluded that ODC met its burden of proving by a preponderance of the evidence that Mr.

Blackwell violated the conditions of his probation, and recommended the same sanction that the Hearing Committee did. Mr. Blackwell then filed exceptions in this court.

We agree with the Board that the evidence established by a preponderance that Mr. Blackwell violated the conditions of his probation requiring him (1) to make monthly child support payments pursuant to a schedule and in an amount sufficient to fully satisfy his child support obligations (including any current arrearage) by the end of the probationary period and (2) to provide ODC with statements showing his compliance with the payment schedule. We also adopt the Board's recommended sanction.

## I.  Background

### A.  Factual Background

The background leading to Mr. Blackwell's suspension and probation based on violations of Rules 3.4(c) and 8.1(a) is set forth in *In re Blackwell*, 299 A.3d 561, and we will not repeat it here. With respect to Mr. Blackwell's compliance with his probation conditions, the Ad Hoc Hearing Committee made the following findings of fact, which are largely undisputed and which we adopt, mindful of our obligation to "accept the findings of fact made by the Board unless they are unsupported by

substantial evidence of record." D.C. Bar R. XI, § 9(h)(1).

Mr. Blackwell was required as a condition of his probation to begin making monthly child support payments no later than thirty days after entry of this court's suspension order. He did not do so. He made no child support payments in 2023 and made one payment of $100 to the D.C. Office of Child Support in October 2024. Mr. Blackwell never made regular monthly payments in an amount sufficient to fully satisfy his child support obligations.

The total amount of child support Mr. Blackwell owed as of the time of the Hearing Committee Report and Recommendation was in dispute. Mr. Blackwell, however, never sought to have a court modify an arrearage amount of $83,400 reflected in VDCSE records, and he did not prove amounts that he estimated he paid directly to the mother of his child, Cinzia Allen. Nor did Mr. Blackwell provide ODC with a payment schedule reflecting a plan to fully satisfy his child support obligations by the end of the probationary period or a statement from the VDCSE showing compliance with a payment schedule.

Mr. Blackwell knew that he could make payments through a state agency other than Virginia's. He never, however, asked the VDCSE if he should make payments to another child support enforcement authority, nor did he request that his probation terms be amended or modified to allow him to make payments to another

child support enforcement authority. The Hearing Committee found not credible Mr. Blackwell's testimony that he did not know that he could make payments to the D.C. Office of Child Support until October 2024, when he made one payment of $100, and Mr. Blackwell did not explain why he did not continue to make payments to the D.C. office after that date. Mr. Blackwell ultimately agreed that he made no child support payments during his probation except for the $100 payment to the D.C. Office of Child Support in October 2024.

## B.     Procedural Background

Before the hearing, the Board issued an order for ODC to serve Ms. Allen with Mr. Blackwell's subpoena for her appearance as a witness and the production of an audio recording of a phone call. Ms. Allen, whom both parties included on their witness lists, testified at the hearing in ODC's case-in-chief and Mr. Blackwell cross-examined her at length. During that cross-examination, ODC objected to certain questions by Mr. Blackwell as outside the scope of direct examination and the Hearing Committee overruled the objection, stating that Ms. Allen would be appearing at the hearing only once and therefore Mr. Blackwell was permitted to question her beyond the scope of ODC's direct examination. Mr. Blackwell accepted that arrangement, noting that if his cross-examination were to be limited, he would seek to bring back Ms. Allen as a witness in his case-in-chief.

Mr. Blackwell nonetheless then subpoenaed Ms. Allen again to appear in his case-in-chief and also subpoenaed the Assistant Disciplinary Counsel who was litigating the case. The Hearing Committee granted ODC's motions to quash both subpoenas, stating that it had permitted Mr. Blackwell to cross-examine Ms. Allen beyond the scope of the direct examination and to take direct evidence, and that the Assistant Disciplinary Counsel had stipulated as to what he would testify to and therefore his testimony was not necessary.

In its report and recommendation, the Hearing Committee first recommended the denial of a motion to dismiss that Mr. Blackwell had filed, in which he argued that he did not willingly violate his probation conditions because, among other things, the VDCSE refused his attempts to obtain documentation regarding his compliance and Ms. Allen "lied" and refused to cooperate with his efforts to make child support payments. The Hearing Committee observed that even if Mr. Blackwell's assertions were true, the undisputed evidence demonstrated that he failed to make any child support payments beyond the $100 payment.

The Hearing Committee then concluded that ODC proved by a preponderance of the evidence that Mr. Blackwell violated the conditions of his probation requiring him (1) to begin making monthly payments pursuant to a schedule and in amount sufficient to fully satisfy his child support obligations by the end of the probationary

period and (2) to provide ODC with the payment schedule and statements showing his compliance with the schedule.  The Hearing Committee noted that, with respect to the "simple question of whether [Mr.] Blackwell had made *any* child support payments or *any* effort to pay off child support arrearages since signing the Probation Order," Mr. Blackwell "confirmed his near total failure to pay child support."  Mr. Blackwell also provided "no evidence of his setting up of regular payments or establishing a payment schedule that would allow him to pay off all arrearages by the end of his probation."  The Hearing Committee acknowledged that the "exact amount Mr. Blackwell owes in child support may be open to challenge," but it concluded that, "on Mr. Blackwell's own testimony," he "failed to make more than a minimal effort to comply with" this court's order to pay monthly child support and arrearages.

The Hearing Committee recommended a sanction consisting of revocation of Mr. Blackwell's probation, suspension for four months (the period of suspension that had been stayed), and a requirement that Mr. Blackwell's reinstatement be contingent on his having made all required child support payments to appropriate child support agencies.  The Hearing Committee accepted in mitigation Mr. Blackwell's testimony about his "deep concern as a parent for the well-being of his child," but it stated that "his failure to provide his child with court-ordered financial support is undisputed" and his "failure to comply with the terms of his probation is

clear."

The Board agreed with the Hearing Committee's recommended disposition of Mr. Blackwell's motion to dismiss and found no error in the Hearing Committee's granting of ODC's motions to quash the subpoenas directed at Ms. Allen and the Assistant Disciplinary Counsel. It also agreed with the Hearing Committee that ODC met its burden of proving by a preponderance of the evidence that Mr. Blackwell violated the conditions of his probation. The Board noted that Mr. Blackwell identified no evidence indicating that the Hearing Committee "erred in concluding (1) that he has not complied with his child support obligations beyond a $100 payment made in October 2024, despite the August 10, 2023 Court order and his signature to the Board's order of probation on September 10, 2023; (2) that he has not established a monthly payment plan; and (3) that he has not applied for a modification of the support orders." In addition, the Board adopted the Hearing Committee's recommended sanction.

Mr. Blackwell filed exceptions to the Board report, bringing the matter before this court. *See* D.C. Bar R. XI, § 9(e), (h); Bd. Pro. Resp. R. 18.4.

## II.    Analysis

ODC has the burden of establishing a violation of conditions of probation by

a preponderance of the evidence. Bd. Pro. Resp. R. 18.3(d). We "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and [we] adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(h)(1). "Substantial evidence means enough evidence for a reasonable mind to find sufficient to support the conclusion reached." *In re Evans*, 902 A.2d 56, 70 (D.C. 2006) (per curiam) (internal quotation marks omitted). We review the Board's legal conclusions de novo. *In re Samad*, 51 A.3d 486, 495 (D.C. 2012) (per curiam).

We have reviewed the record and conclude that the findings of fact made by the Hearing Committee and adopted by the Board are supported by substantial evidence. As the Board determined, there is no basis from which to conclude that the Hearing Committee erred in finding "(1) that [Mr. Blackwell] has not complied with his child support obligations beyond a $100 payment made in October 2024, despite the August 10, 2023 Court order and his signature to the Board's order of probation on September 10, 2023; (2) that he has not established a monthly payment plan; and (3) that he has not applied for a modification of the support orders." The record supports the Hearing Committee's determination that there has been a "near total failure" by Mr. Blackwell "to pay child support."

Mr. Blackwell asserts that the Board committed errors of law and that its findings are not supported by substantial evidence, but he does not develop this argument, *see Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citation modified), and he provides no specifics beyond one example. That example involves an alleged legal error in the Hearing Committee's use of the term "home state" in its finding that years ago Mr. Blackwell made a child support payment in Maryland, where he lived at the time (from this fact the Hearing Committee drew the inference that Mr. Blackwell knew that he could make a child support payment in a state other than Virginia). The Hearing Committee appears to have been using "home state" in its colloquial sense, not as it is used in D.C. Code § 16-4601.01(8), and, regardless, any error in this regard is of minimal significance.

Mr. Blackwell's other exceptions and arguments are unpersuasive. First, he contends that the Hearing Committee chair was biased against him. This argument too is insufficiently developed, *see Oji Fit World, LLC v. District of Columbia*, 325 A.3d 392, 405 n.9 (D.C. 2024) (declining to address claim that trial court was biased where appellants offered no support for the assertion), and, in any event, "in all but the most extreme cases, rulings during courtroom proceedings do not constitute evidence of judicial bias," *Plummer v. United States*, 870 A.2d 539, 547 (D.C. 2005)

(citation modified).

Second, Mr. Blackwell takes issue with the Board's determination that the Hearing Committee did not err in granting ODC's motions to quash the two subpoenas. We agree with the Board that the Hearing Committee was within its discretion in quashing both subpoenas. *Cf. Russell v. United States*, 65 A.3d 1172, 1174 (D.C. 2013) (grant of motion to quash subpoena reviewed for abuse of discretion). The record shows that ODC examined Ms. Allen over eleven pages of transcript while Mr. Blackwell's examination of Ms. Allen consumed 121 pages, with Mr. Blackwell going well beyond the scope of the direct examination and eliciting direct evidence from Ms. Allen. The Hearing Committee also explained to Mr. Blackwell at the time that it did not intend to make Ms. Allen appear twice and therefore he could question her beyond the scope of ODC's direct examination, and Mr. Blackwell expressed his understanding that that arrangement was an alternative to limiting the scope of his cross-examination and having Ms. Allen reappear for his case-in-chief. We defer to the Hearing Committee's determination that, in these circumstances, bringing Ms. Allen back to testify further was not warranted. With respect to the Assistant Disciplinary Counsel, we see no error in quashing a subpoena directed at opposing counsel, especially where the Hearing Committee accepted a stipulation as to what the Assistant Disciplinary Counsel would testify to.

Third, Mr. Blackwell challenges the Board's agreement with the Hearing Committee's recommendation that his motion to dismiss the petition for revocation be denied. Mr. Blackwell's argument is essentially that the petition was subject to dismissal because it was "undisputed" that the VDCSE would not accept child support payments from him, make a payment plan, or provide any documentation showing payments. We agree with the Hearing Committee and the Board that, even if that is true, dismissal of the petition was not warranted. As we recognized in *In re Blackwell*, Mr. Blackwell was permitted to "to seek modification of his child support obligations and permit proof of payment either from VDCSE or through other evidence, which could include payment to Maryland." 299 A.3d at 573-74. Mr. Blackwell presented no evidence of any child support payments to any state agency other than a single payment of $100 to the D.C. Office of Child Support. The petition for revocation of probation was accordingly not subject to dismissal.

Fourth, Mr. Blackwell contests the Board's recommended sanction. "Violation of any condition of probation shall make the attorney subject to revocation of probation and the imposition of any other disciplinary sanction listed in this subsection, but only to the extent stated in the order imposing probation." D.C. Bar R. XI, § 3(a)(7).

> Where the Hearing Committee finds a violation of the terms or conditions of probation, it may recommend

> (i) that no additional sanction be imposed, (ii) revocation of the probation and imposition of any sanction authorized by Section 3(a) of Rule XI, including but not limited to modification of the terms or conditions of the probation, but no greater discipline may be recommended than the underlying sanction imposed in the Court's order of probation, or (iii) such other disposition as the Hearing Committee concludes is consistent with Section 3(a)(7) of Rule XI and will serve the purposes of justice and the disciplinary system. In determining the appropriate sanction, the Hearing Committee may consider the nature or seriousness of the violation, as well as any mitigating or aggravating factors.

Bd. Pro. Resp. R. 18.3(g).

The recommended sanction comes to us with a "strong presumption in favor of its imposition," *In re Hallmark*, 831 A.2d 366, 371 (D.C. 2003), and "[i]f the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed," *In re McClure*, 144 A.3d 570, 572 (D.C. 2016) (per curiam) (internal quotation marks omitted). The ultimate responsibility of imposing sanctions, however, "rests with this court in the first instance." *In re Godette*, 919 A.2d 1157, 1164 (D.C. 2007) (internal quotation marks omitted). In imposing the sanction, we must ensure that we do not "foster a tendency toward inconsistent dispositions for comparable conduct" and that the sanction is not "otherwise . . . unwarranted." D.C. Bar R. XI, § 9(h)(1). "Where this court takes a significantly different view of the seriousness of an attorney's conduct, the court thus has not hesitated to reach its own conclusion as to the appropriate sanction." *In*

*re Baber*, 106 A.3d 1072, 1076 (D.C. 2015) (per curiam).

In imposing professional discipline, we aim "not only to maintain the integrity of the profession and to protect the public and the courts, but also to deter other attorneys from engaging in similar misconduct." *In re Martin*, 67 A.3d 1032, 1053 (D.C. 2013) (internal quotation marks omitted). "[T]he purpose of imposing a sanction is not to punish the attorney." *In re Avery*, 189 A.3d 715, 720 (D.C. 2018) (per curiam) (internal quotation marks omitted). When determining the appropriate disciplinary sanction, we evaluate "(1) the seriousness of the conduct, (2) prejudice to the client, (3) whether the conduct involved dishonesty, (4) violation of other disciplinary rules, (5) the attorney's disciplinary history, (6) whether the attorney has acknowledged his or her wrongful conduct, and (7) mitigating circumstances" as non-exhaustive factors. *Martin*, 67 A.3d at 1053.

We conclude that revocation of Mr. Blackwell's probation, suspension for four months (the period of suspension that had been stayed), and a requirement that Mr. Blackwell's reinstatement be contingent on his having made all required child support payments to appropriate child support agencies is within the wide range of acceptable outcomes in this case. As we observed in *In re Blackwell*, Mr. Blackwell's failure to comply with court orders was serious misconduct, 299 A.3d at 573, and Mr. Blackwell again made virtually no effort to comply with this court's

order.  Mr. Blackwell, moreover, continues to deny his wrongful conduct and casts aspersions on the Hearing Committee chair, ODC, and Ms. Allen.  In light of these circumstances, we agree that suspending Mr. Blackwell for the period of suspension that we stayed is appropriate, as is a requirement that he make all required child support payments in order to be reinstated.

### III.    Conclusion

For the foregoing reasons, Mr. Blackwell's probation is revoked and he is suspended from the practice of law in the District of Columbia for four months, with his reinstatement contingent on his having made all required child support payments to appropriate child support agencies.  For purposes of reinstatement, Mr. Blackwell's suspension will not begin to run until he files an affidavit that fully complies with the requirements of D.C. Bar R. XI, § 14(g).

*So ordered.*