## KENNEY v. WASHINGTON PROPERTIES, Inc.

### No. 7897.

United States Court of Appeals for the District of Columbia.

Argued May 11, 1942.

Decided June 8, 1942.

---

Walter M. Shea and Lyle F. O'Rourke, both of Washington, D. C., for appellant.

Charles W. Arth and Paul E. Lesh, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and EDGERTON and RUTLEDGE, Associate Justices.

GRONER, C. J.

On the morning of January 27, 1938, the body of appellant's husband was found on the ground beside appellee's hotel. His neck was broken, and he was pronounced dead.

This action was begun by the administratrix to recover damages from the hotel. The record shows that decedent on the evening of January 26th was a guest at a banquet given at the hotel by the New Jersey Chamber of Commerce. Cocktails were served prior to dinner, and wine at dinner. The banquet was over at approximately 11:30, and about midnight decedent and a friend visited in the bedroom suite of Mr. Kelleher, a guest of the hotel. This bedroom was on the sixth floor, and its window was immediately over the place where the body was found. At about 2 o'clock the friend left, and decedent accepted Mr. Kelleher's invitation to spend the remainder of the night in his suite. About 2:30 decedent selected the bed nearest the window and was asleep when Mr. Kelleher retired. At that time the window was open. The next morning Mr. Kelleher was awakened about 8 o'clock by employees of the hotel and apprised of the finding of the body. An autopsy showed that decedent was a man 53 years of age, 5 feet 5 inches in height, weighing 166 pounds, and suffering from chronic heart disease. A specimen of his blood tested for alcoholic content showed a percentage of 17/100ths of 1% as against a normal content of 5/10,000ths of 1%.

The complaint alleged that decedent came to his death by falling to the ground while attempting to adjust the window and charged negligence in the failure to provide adequate and proper safeguards for the windows. At the conclusion of the plaintiff's case, Judge Pine directed a verdict for the defendant. This appeal followed. The grounds of the appeal are: (a) The refusal of the lower court to permit an expert to testify that the manner of construction of the windows made them dangerous; and (b) the refusal of the court to permit the case to go to the jury. We think there is no merit in either point.

First. To maintain her case, appellant called two Washington architects as expert witnesses. The first testified that he had examined the casement window in the room occupied by decedent, and had made a sketch, which he exhibited to the jury. Summarized, his testimony shows that the window sill was 22¼ inches above the floor line; that the window consisted of two panels, each not quite 1½ feet wide, separated by a stationary steel bar or mullion extending from the bottom to the top of the window, and to which the two panels were fastened when the windows were closed. When opened, the space between the center bar and the panel hinge was 13 inches plus. The method of locking the window was by the use of a cam-operated lever, which was the usual type of locking device on a casement window, but to open or close the window, and to hold it stationary when open, there was a device consisting of a bar and thumb screw. In front of the center of the window was a standard size radiator 17 inches high. The witness testified that when either window panel was fully opened a person in the room who chose to close it by the fastener handle on the panel, rather than by use of the opening and closing bar, would have to extend either his arm or body over the radiator and sill a distance of a little more than 3 feet, but that if the holding bar was used the window could be opened or closed standing upright on the floor of the room. At the conclusion of this witness' testimony on direct, counsel for appellant asked him, over the objection of appellee, if the window construction he had found in the room was usual or safe. The witness expressed the opinion it was unusual in hotel construction and unsafe. The court reserved the question until the conclusion of the witness' entire testimony and then instructed the jury to disregard the statement that the window was unsafe.

The second expert witness had not personally examined the room, but testifying from the drawing presented by the former witness, in answer to the question whether the window, considering its height from the floor, the presence and height of the radiator, was safe, said it was not, and explained that "the height of the sill from the floor and that type of window, the loca-

tion of the radiator, all tend to make it a very dangerous window". The court likewise instructed the jury to disregard this statement.

■ We are of opinion that the exclusion of the answers to the questions asked of the experts was correct. The general plan of the window in question was shown by the witnesses not to violate any of the District of Columbia building construction rules, and the window was shown to be the ordinary type of casement window which, though unusual in hotels, is common in private residences. The question, whether in the circumstances its use was dangerous, did not concern a technical matter, as to which expert evidence added anything to the common knowledge of the layman, but was a matter of observation and common judgment, in which the man of ordinary experience in looking at the window or hearing it described, was as capable of forming an opinion as an architect or builder. In such case the rule as to the admission of opinion evidence is generally agreed to be that it is only upon subjects about which the jury is not as able to judge as is the witness that an expert is allowed to express an opinion. In District of Columbia v. Haller, 4 App.D.C. 405, we announced this as the rule in this jurisdiction, and we have not since had occasion to modify it in any respect. That case was a suit to recover damages for injuries suffered as the result of the defective condition of a sidewalk. In declining to permit expert testimony on the subject, we said: "It does not require a skilled expert to inform the jury as to when the streets or sidewalks are in a safe or dangerous condition." The later case of Walker v. Dante, 61 App.D.C. 175, 58 F.2d 1076, 1077, was a suit for injuries sustained as the result of tripping and falling over a step or rise about one and a half inches high, situated between show windows in a public passageway in a store. We said that the expert opinion of an engineer as to whether it was usual to have steps in a passageway leading up to the entrance to stores was properly rejected. And the whole subject is discussed and the same principle approved in Milwaukee, etc., R. Co. v. Kellogg, 94 U.S. 469, 472, 473, 24 L.Ed. 256. See, also, Inland & S. Coasting Co. v. Tolson, 139 U.S. 551, 560, 11 S.Ct. 653, 35 L.Ed. 270; Spokane & I. E. R. Co. v. United States, 241 U.S. 344, 351, 36 S.Ct. 668, 60 L.Ed. 1037; National Biscuit Co. v. Nolan, 8 Cir., 138 F. 6; Lake v. Shenango F. Co., 8 Cir., 160 F. 887; Hunt v. Kile, 7 Cir., 98 F. 49; Henion v. New York, N. H. & H. R. Co., 2 Cir., 79 F. 903. In all of these cases the conclusion is that to permit opinion evidence on subjects of the nature we are concerned with here would be a clear invasion of the province of the jury and would be erroneous.

■ Second. The theory of appellant's suit is that deceased, after he had gone to bed and to sleep, awoke, and finding the room cold, undertook to close the window, lost his balance, and fell. But the record is wholly lacking in any evidence to bear this out. The trial judge, in granting the motion for a directed verdict, told the jury that if the hotel had maintained a dangerous window in the bedroom, and if its negligence in this respect was the proximate cause of decedent's death, the hotel would be liable, but that, since the evidence construed most favorably to the plaintiff was not sufficient to justify this conclusion, binding instructions would have to be given. "All we have," the court said, "is the fact that [decedent] was in this room at 2:30 in the morning; that his body was found sometime around 8 o'clock in the morning on the pavement below in a line with this open window. Now, assuming he went out of that window to the pavement below, where is the evidence that that was due to any negligence on the part of the defendant in the maintenance of the window and the set-up surrounding the window? It would be pure guessing and speculation, which neither you nor I have any right to indulge in determining liability".

■ Undoubtedly this is a fair review of the state of the evidence. No one knows how decedent came to his death. The aperture between the window and the mullion, with the window open to its fullest extent, was only 13 inches wide, which would suggest that if decedent's body fell through this narrow space it must have been sidewise. The window itself was equipped with devices by which it could be opened or closed without the necessity of projecting any part of the body into the opening. The radiator, which was partially in front of the window was, according to all of the evidence, in the customary place, and there was room on either side for a person to stand while opening and closing the window by the bar and thumb screw. This proves that the window was not dangerous when operated in this manner, but it leaves

unexplained whether it was operated in this manner, or by the cam lever, or indeed, whether it was operated at all. It is just as reasonable to infer that the fall was occasioned by a heart attack, or from overindulgence, or in half a dozen other ways if one's imagination is to be given full vent. Finally, if it be assumed that the accident happened as appellant contends, there would still be nothing to show causal connection between the physical arrangements and the fall. In this view, the court had no alternative but to take the case from the jury. We have often said that, while a satisfactory conclusion may be reached through an inference from established facts, there must still be facts proved from which the inference can be drawn. No inference of fact may be drawn from a premise which is wholly uncertain. Benedick v. Potts, 88 Md. 52, 40 A. 1067, 41 L.R.A. 478.

We have carefully considered the cases cited in appellant's brief, but we find in none of them anything which is inconsistent with this rule or which would permit a recovery in a case wholly barren of evidence showing either negligence or proximate cause. To have submitted the case to the jury would have been to invite guess and conjecture. A verdict based upon either could not be sustained.

Affirmed.