Napoleon James SIMPSON and Government
Employees Insurance Company,
a corporation, Appellants,

v.

LOGAN MOTOR COMPANY, a corporation,
and Ford Motor Company, a cor-
poration, Appellees.

No. 3184.

District of Columbia Court of Appeals.

Argued April 22, 1963.

Decided June 19, 1963.
Rehearing Denied July 10, 1963.

George H. Eggers, Washington, D. C.,
for appellants.

Leonard L. Lipshultz, Washington, D. C.,
with whom Sol Friedman, Washington, D.
C., was on the brief, for appellee Logan
Motor Co.

Peter R. Cella, Jr., Washington, D. C.,
with whom Richard W. Galiher and Wil-
liam E. Stewart, Washington, D. C., were
on the brief, for appellee Ford Motor Co.

Before HOOD, Chief Judge, and QUINN
and MYERS, Associate Judges.

QUINN, Associate Judge.

Napoleon Simpson and his subrogor, Gov-
ernment Employees Insurance Company
(hereafter referred to as GEICO), brought
this action for property damage to Simp-
son's automobile. At the close of their
evidence the trial court directed a verdict
for appellees. This appeal followed.

In July 1958 Simpson purchased a new
Ford Thunderbird automobile from Logan
Motor Company. Combining business and
pleasure, he drove the car 4,600 miles dur-
ing the next two months. In September he
was involved in an accident when the car's
power brakes failed to operate. The brake
failure occurred while the car was descend-
ing a steep hill and at the base of the hill,
Simpson struck the car in front of him.

Appellants' complaints against Ford and
Logan alleged negligence and breach of

warranty; however, an express warranty was never proven against Logan, and the warranty theory against Ford was abandoned at pretrial. Hence the only theories in the case at the close of appellants' evidence were negligence and implied warranty[1] against Logan.

Appellants' case was predicated upon the establishment of a causal relationship between a defect at the time of manufacture and the brake failure in question. They introduced testimony to show the following. Shortly after purchasing the car Simpson complained to Logan that the brake pedal seemed low. Logan's service manager tested the pedal and informed Simpson that this condition was normal on cars with power brakes. At the 1,000 mile check, Logan inspected the brake system and found it in good working order. Thereafter, and until the time of the accident, Simpson never had the brakes serviced by a dealer other than Logan. Two policemen who investigated the accident stated that the brake pedal went completely to the floor. Their investigation further disclosed an odor of brake fluid around the car, although they could not find any evidence of leakage. The tow truck operator corroborated their testimony that the brake pedal offered no resistance.

Of crucial importance was the testimony of Mr. Minson, GEICO's claims adjuster, who qualified as an expert witness. In response to a hypothetical question as to the probable cause of a brake failure under similar circumstances, Minson answered: "It would be the by-pass valve in the master cylinder." Upon objection to this line of questioning by counsel for appellees, the court said: "All we have is an opinion * * * that a brake which acted as this one did under the circumstances would have been caused so to act by a defective by-pass valve of the master cylinder."

Thereafter, Minson testified that a defective by-pass valve could result from either a foreign substance in the hydraulic fluid or from a structural defect in the valve itself. He stated that a proper inspection by Ford would have revealed both these defects but that neither defect would have been discovered during the standard inspection performed by Logan. While he admitted that some other cause *might* have produced the brake failure, he stated emphatically that neither a structural defect nor a foreign substance in the fluid, present at the time of manufacture, would *necessarily cause a brake failure* prior to the time a car had been driven 4,600 miles.

The record reveals considerable confusion over Minson's additional statement that a foreign substance in the hydraulic fluid would probably correct itself. The trial judge found that this statement necessitated a jury finding for appellees if the jury concluded that a foreign substance existed in the fluid at the time of manufacture. We do not agree. Such a conclusion indeed confused cause and effect. The "effect," namely, the brake failure, would not have occurred if the "cause," a foreign substance in the hydraulic fluid, had corrected itself. Rather, Minson's testimony, construed most favorably to appellants,[2] established that a brake failure, under the circumstances, was probably caused by a defective by-pass valve the result, in turn, of either a structural defect or a foreign substance in the hydraulic fluid which, a fortiori, did not correct itself. It is in this posture that the principal question on this appeal was raised: whether appellants had established a prima facie case.

Generally cases are not to be submitted for jury consideration when there is no evidentiary foundation on which to predicate intelligent deliberation and reach a reliable verdict.[3] Nevertheless, we have

---

1. Code 1961, 28–1115.

2. Saylor v. Handley Motor Company, D.C. Mun.App., 169 A.2d 683 (1961).

3. Automobile Insurance Co. of Hartford, Conn. v. Williams, D.C.Mun.App., 111 A. 2d 874, 876 (1955). See also, Kenney .v. Washington Properties, 76 U.S.App. D.C. 43, 46, 128 F.2d 612, 615 (1942).

noted that a court is not concerned with every conceivable possibility in a case, but rather with what the evidence will establish as a reasonable probability.[4] While the burden of showing cause is on the plaintiff, if he offers evidence from which reasonable minds could reach a conclusion, the question is for the jury.

In Lavender v. Kurn,[5] a switch tender was found dead alongside defendant's railroad tracks. The evidence showed he had been struck in the head by some object which fractured his skull and caused his death. There was no eye witness. It was shown that at the time the injury occurred a train passed equipped with a mail hook which, if it was extended, could have struck the deceased and inflicted the injury. The question was raised as to whether the jury could reasonably infer from these facts that the hook struck and killed the deceased. It was not shown that the hook was in fact extended at the time and place of the deceased's injury, and it did appear that, except for an elevation in one place in the ground along the track, the hook, even if extended, was too high to have struck the deceased standing on the ground. The Court held that the case, on this evidence, was properly submitted to the jury, and that it could reasonably be inferred that the death was caused by the extended hook. The Court said:

"* * * Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the con-

clusion reached does a reversible error appear. * * *"[6]

Knapp v. Willys-Ardmore, Inc.[7] and Henningsen v. Bloomfield Motors, Inc.[8] present factual situations similar to the case at bar where the plaintiffs' theory was breach of implied warranty. In both cases the courts held that the breach of an implied warranty of merchantability was circumstantially supported by the necessary quantum of proof. The courts pointed out that while the existence of a defect cannot be found on the basis of mere conjecture or guess, it is not necessary to exclude every other possible cause which the ingenuity of counsel might suggest.

In this case, at the close of appellants' evidence the jury could have reasonably inferred that the brake failure resulted from a defective by-pass valve and that a proper inspection by Ford at the time of manufacture would have revealed the imperfections responsible for this malfunction, namely, a structural defect in the valve itself or a foreign substance in the hydraulic fluid. The jury could have found also that the sale by Logan gave appellants a cause of action for breach of implied warranty under the District of Columbia Code. It was not necessary for appellants to establish that the *sole possible cause* of a brake failure under the circumstances was a defective by-pass valve, but only that a defective by-pass valve was the *probable* cause. In our view they sustained this burden of proof. Appellees, of course, will now have the opportunity to present rebutting evidence.

The record indicates that appellants abandoned their theory of breach of warranty against Ford prior to our decision in Picker X-Ray Corp. v. General Motors Corp.[9]

4. Insurance Company of North America v. Ruppert, D.C.Mun.App., 156 A.2d 796, 797 (1959). See also, State Farm Mutual Automobile Ins. Co. v. Anderson-Weber, Inc., 252 Iowa 1289, 110 N.W. 2d 449, 456 (1961).

5. 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946).

6. Id., at 653, 66 S.Ct. at 744.

7. 174 Pa.Super. 90, 100 A.2d 105 (1953).

8. 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960).

9. D.C.Mun.App., 185 A.2d 919 (1962).

Therefore, on remand appellants should be permitted to proceed under the more liberal view which this case recognizes.

Reversed and remanded with instructions to award a new trial.