**In re Brian O. GODETTE, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 433283).**

**No. 05–BG–412.**

District of Columbia Court of Appeals.

Argued June 22, 2006.

Decided April 5, 2007.

The question of whether attorney deliberately evaded service of process in bar disciplinary case was one of basic, or evidentiary, fact; it was not a conclusion of law, for purposes of review by Board on Professional Responsibility (BPR).

---

No appearance for Respondent.

Elizabeth J. Branda, for the Board on Professional Responsibility.

John T. Rooney, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before FISHER, Associate Judge, and WAGNER and SCHWELB, Senior Judges.*

SCHWELB, Senior Judge:

In a Report and Recommendation issued on May 2, 2005, the Board on Professional Responsibility (BPR or the Board) found by clear and convincing evidence that Brian O. Godette, a member of our Bar, violated Rule 8.1(b) of the Rules of Professional Conduct (failure to respond reasonably to a lawful demand for information from a disciplinary authority), Rule 8.4(d) (serious interference with the administration of justice), and D.C. Bar R. XI, § 2(b)(3) (failure to comply with an order of the BPR). The Board recommended that Godette be suspended from practice for thirty days and that, before

---

* Judge Schwelb was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on June 24, 2006.

resuming the practice of law, he be required to show (1) that he has made a response to the underlying ethical complaint against him, and (2) that he has taken six hours of Continuing Legal Education (CLE) courses in ethics and professional responsibility.

Godette, who has not participated in this case before the Hearing Committee, before the Board, or before this court, and who is under administrative suspension from our Bar for non-payment of dues, has filed no exception to the Board's recommendation. Bar Counsel proposed to the Board, and now urges before this court, that Godette be required, as a condition of reinstatement, to prove his fitness to resume the practice of law. The Board rejected this recommendation because, notwithstanding what was in effect a contrary finding by the Hearing Committee,[1] it concluded "that there is no substantial evidence in the record to conclude that [Godette] deliberately evaded service of process in this case." Because Godette never challenged the Hearing Committee's position on the issue, and because there is ample and even compelling evidence, in the record taken as a whole, that Godette deliberately avoided service of process, we conclude that the Board's recommendation that a "fitness" requirement not be imposed is based on an incorrect factual premise. We therefore remand to the Board so that on the basis of a factual predicate consistent with this opinion, it may reconsider whether, as a further condition of reinstatement, Godette should be required to prove his fitness to practice law.

# I.

## FACTUAL BACKGROUND

This is a case in which an attorney, after allegedly abandoning a civil matter on behalf of an incarcerated client who claimed to have paid him a substantial fee, repeatedly and contemptuously[2] ignored the efforts of the disciplinary authorities to determine the merits of the client's complaint. Godette's complete failure, over a substantial period of time, to recognize or carry out his ethical obligation to cooperate with Bar Counsel and with the Board at least arguably casts grave doubt as to his fitness to practice law in the District of Columbia.

The proceedings against Godette had their origin in a letter dated October 21, 2001, from Terry S. Hill–Bey, who was then incarcerated in Jessup, Maryland, to the "Attorney Grievance Committee of the District of Columbia." In his letter, Mr. Hill–Bey asserted that on August 9, 1996, he had signed a retainer agreement with Godette's law firm for work relating to the estate of Hill–Bey's mother, that he had paid $975.00 in fees to the firm (as well as a retainer fee), and that "this law firm abandoned the case back in August of 1998, with no reason as to why." Hill–Bey claimed that he and members of his family had attempted to contact Godette and his firm, but had received no response.

Beginning on November 27, 2001, and over a period of more than half a year, the Office of Bar Counsel sent seven separate letters to Godette at his address of record with our Bar, and then at two other addresses, each enclosing a copy of Mr. Hill–Bey's complaint and requesting a response

---

1. In its discussion of the recommended sanction, the Committee "inferred" that Godette evaded service of process and referred to his "apparent evasion of service." Although the Board, in its Report, referred to the Hearing Committee's "conclusion" that Godette deliberately evaded service of process, that conclu-

sion was obviously one of fact, and the Board treated it as a finding of fact and applied the "substantial evidence" standard to it.

2. We use this term in its popular (rather than legal) sense.

thereto.[3] No response was received to any of these seven letters, and none of them was returned by the Post Office.

In July 2002, having received no response from Godette, Bar Counsel initiated enforcement proceedings, with the following results (as described in the Board's Report):

10. On or about July 3, 2002, an Assistant Bar Counsel filed a motion to compel Respondent's response to the ethical complaint, and on July 3, 2002, sent a copy to Respondent at 12205 Torrey Pines Terrace, Beltsville, Maryland 20705. The motion included as attachments copies of Bar Counsel's previously sent correspondence as well as another copy of the ethical complaint. The motion was not returned, and Respondent did not respond.

11. On August 5, 2002, the Board issued an Order that required Respondent to respond to the Complaint and to each of Bar Counsel's letters within ten days of the date of the Order. On August 6, 2002, the Order was sent to Respondent at 825 North Capitol Street, Washington, D.C. 20002, and at 12205 Torrey Pines Terrace, Beltsville, Maryland 20705. Respondent did not respond.

12. On or about August 16, 2002, Respondent left a telephonic message with an Assistant Bar Counsel stating that Respondent would submit his response by the close of business on Monday, August 19, 2002. No response was received.

(Citations to record omitted.) It is thus undisputed that as of mid-August 2002, by

---

**3.** These letters are described as follows in the Board's Report:

3. On November 27, 2001, an Assistant Bar Counsel sent a letter, enclosing a copy of the complaint, to Respondent at 825 North Capitol Street, Washington, D.C. 20002, Respondent's address of record with the District of Columbia Bar at the time Bar Counsel's investigation commenced, requesting a response by December 5, 2001. Respondent failed to respond, and the letter was not returned.

4. On December 12, 2001, an Assistant Bar Counsel sent a second letter together with a copy of the complaint, to Respondent at 825 North Capitol Street, Washington, D.C. 20002, requesting a response by December 17, 2001. Respondent failed to respond, and the letter was not returned.

5. On February 20, 2002, an Assistant Bar Counsel sent a third letter to Respondent at 13832 Northgate Drive, Silver Spring, Maryland 20906 (an address obtained by Bar Counsel's investigator), requesting a response by March 4, 2002. Respondent failed to respond, and the letter was not returned.

6. On March 15, 2002, an Assistant Bar Counsel wrote Respondent at 13832 Nor-thgate Drive, Silver Spring, Maryland 20906, directing him to submit a written response to the ethical complaint within five days. Respondent failed to respond, and the letter was not returned.

7. On April 1, 2002, an Assistant Bar Counsel sent another letter to Respondent at 13832 North Gate Drive, Silver Spring, Maryland 20906 (a variation of the address obtained by Bar Counsel's investigator), requesting a response by April 12, 2002. Respondent failed to respond, and the letter was not returned.

8. On May 7, 2002, an Assistant Bar Counsel sent another letter, enclosing a copy of the complaint, to Respondent at 12205 Torrey Pines Terrace, Beltsville, Maryland 20705 (Respondent's secondary address of record with the District of Columbia Bar), requesting a response by May 17, 2002. Respondent failed to respond, and the letter was not returned.

9. On June 18, 2002, an Assistant Bar Counsel wrote to Respondent at 12205 Torrey Pines Terrace, Beltsville, Maryland 20705, requesting a response within 10 days. No response was received, nor was the letter returned.

(Citations to the record omitted.)

which time seven letters (accompanied by Hill–Bey's complaint), one motion to compel, and one order of the Board had been sent to him, Godette was aware of the ethical complaint against him. Notwithstanding the telephone message that he left with Bar Counsel to the effect that he would respond within three days, however, Godette neither responded nor cooperated in any other way.

For some reason not explained in the record, there were no further developments in this matter between August 16, 2002 and April 25, 2003. Beginning on the latter date, a process server attempted on seven different dates, at various hours of the day, including early morning and late evening, to effect personal service on Godette.[4] Six of these attempts were made at the Beltsville address, and on two occasions, one at 6:40 a.m. and one at 6:10 p.m., the process server reported hearing activity that led him to believe that someone was in the residence. Nevertheless, nobody came to the door on any of these occasions, and the process server was never able to serve Godette personally with the specification of charges.[5] Finally, on June 25, 2003, at the request of Bar Counsel, this court entered an order directing that the petition be served on Godette by mailing a copy to his Beltsville residence and by publication in two successive issues of *The Washington Post* and *The Washington Times*.

On July 8, 2003, Godette acknowledged receipt of the Specification of Charges, the Petition Instituting Formal Disciplinary Proceedings against him, and of the Rules of the Board. He did so by signing a certified return receipt acknowledging delivery at the Beltsville address. The unkept promise of August 16, 2002, to file a response and the signing of this receipt are the only actions (if, indeed, they can be described as actions) that Godette has taken in this case from 2001 until the present date.[6]

---

**4.** These attempts are described in the Board's Report as follows:

> 13. On April 25, 2003, at 2:15 p.m., process server Vincent Piazza attempted to serve Respondent with the Specification of Charges at 825 North Capitol Street, Washington, D.C. 20002, but discovered that there was no one by his name at the address.
> 14. On April 27, 2003, at 9:30 a.m., Mr. Piazza attempted to serve Respondent at 12205 Torrey Pines Terrace, Beltsville, Maryland 20705. There was no answer at the door when Mr. Piazza knocked.
> 15. On May 3, 2003, at 6:10 p.m., Mr. Piazza attempted to serve Respondent at 12205 Torrey Pines Terrace, Beltsville, Maryland 20705. There was no answer at the door when Mr. Piazza knocked, although it sounded to Mr. Piazza as if someone were inside the home.
> 16. On May 6, 2003, at 7:30 p.m., Mr. Piazza again attempted to serve Respondent at 12205 Torrey Pines Terrace, Beltsville, Maryland 20705. There was no answer at the door when Mr. Piazza knocked.

> 17. On May 9, 2003, at 7:10 a.m., Mr. Piazza again attempted to serve Respondent at 12205 Torrey Pines Terrace, Beltsville, Maryland 20705. There was no answer at the door when Mr. Piazza knocked.
> 18. On May 10, 2003, at 8:30 p.m., Mr. Piazza again attempted to serve Respondent at 12205 Torrey Pines Terrace, Beltsville, Maryland 20705. There was no answer at the door when Mr. Piazza knocked.
> 19. On May 12, 2003, at 6:40 a.m., Mr. Piazza attempted to serve Respondent at 12205 Torrey Pines Terrace, Beltsville, Maryland 20705. There was no answer at the door when Mr. Piazza knocked, although it sounded to Mr. Piazza as if someone were inside the home.

(Citations to record omitted.)

**5.** There was no evidence, however, that Godette was seen on any of these occasions at the addresses at which service was attempted.

**6.** Godette did, however, agree to two requests by the Board for extensions of time to file its brief in this court.

## II.

## PROCEEDINGS BEFORE THE HEARING COMMITTEE AND THE BOARD

On August 21, 2003, an Ad Hoc Hearing Committee held a hearing on Bar Counsel's complaint. As previously noted, Godette neither responded to the charges nor participated in any other way. The Committee made proposed findings of fact essentially identical to the findings subsequently adopted by the Board. The Committee also stated, however, that "based on the record evidence, the Committee infers that Respondent evaded service of process, thereby causing Bar Counsel and the [c]ourt to expend additional resources to effectuate service of process through alternative means." The Committee found that Bar Counsel had established all three charges by clear and convincing evidence. The Hearing Committee recommended the same sanction that the Board later proposed, see pp. 1158–59, *supra*, except that the Committee suggested that Godette be required to complete twelve (rather than six) hours of CLE relating to legal ethics and professional responsibility. With apparent reluctance, the Hearing Committee rejected Bar Counsel's recommendation that Godette be required to prove fitness as a condition of reinstatement; the Committee apparently concluded that it was precluded by BPR precedent from proposing such a condition:

> We are mindful of cases cited by Bar Counsel stating that a fitness requirement would ordinarily be appropriate in a case such as this. *See In re Hallmark,* 831 A.2d 366, 376–77 (D.C.2003); *In re Lockie,* 649 A.2d 546, 547 (D.C. 1994); *In re Steinberg,* 761 A.2d 279 (D.C.2000). In light of *Cater* and *Miller,* however, we believe that a different result is dictated here. *In re Cater,* Bar Docket Nos. 337–99 *et al.; In re Miller,* Bar Docket No. 55–00.

Bar Counsel excepted to the Hearing Committee's recommendation, urging that Godette be required to prove fitness as a condition of reinstatement; Godette filed no exceptions. The Board essentially adopted most of the Hearing Committee's findings, and proposed the same sanction as the Committee had suggested, except that it recommended that Godette be required to complete six (rather than twelve) hours of CLE. The Board declined to recommend a fitness requirement, however, because in its view

> there is not substantial evidence in the record to conclude that Respondent deliberately evaded service of process in this case. Absent that finding, the Board concludes that this is not an appropriate case for a fitness requirement.

The Board elaborated in its Conclusions of Law:

> The Board certainly accepts the proposition that a finding of deliberate evasion of service of process in the disciplinary system, were it supported by substantial evidence, would be an important factor justifying the imposition of a fitness requirement in addition to a period of suspension. *See, e.g., In re Wright,* 702 A.2d 1251, 1253–54, 1257 (D.C.1997) (per curiam) (Attached Board Report); *[In re] Delaney,* 697 A.2d [1212,] 1213 n. 3 [(D.C.1997)]; *see also In re Cater,* Bar Docket Nos. 337–99 *et al.* at 30 (BPR June 26, 2003) (pending before the [c]ourt). In this case, however, the Board is unable to conclude that such a finding is supported by substantial evidence. As noted above, the Hearing Committee's conclusion that Respondent deliberately evaded service of process appears to be based on the affidavit of Mr. Piazza. There are, however, two difficulties with reliance on the Piazza affidavit to establish the point

that Respondent deliberately evaded process.

First, the Piazza affidavit, which was filed in conjunction with Bar Counsel's motion for an order of the Board directing a response to the ethical complaint, was not live testimony before the Board, and so the Hearing Committee had no occasion to probe Mr. Piazza's statement or to make an evaluation of his credibility. Second, in his affidavit, Mr. Piazza stated only that, on two occasions when he sought to serve process on Respondent personally, no one answered the door even though it "sounded as though someone was home" or that he heard "noises from within the home." In our judgment, these statements are insufficient to establish that Respondent was inside the house at the time but failed to answer the door because he suspected the presence of a process server, or that someone acting at Respondent's direction declined to answer the door because he suspected that someone might be trying to serve process. The noises that Mr. Piazza heard inside the house might have been coming from a minor not authorized to accept service, someone who had no idea who was at the door and who declined to open the door to an unannounced stranger, or for aught we know, an animal. Perhaps this point might have been amplified had Mr. Piazza testified at the disciplinary hearing, but as noted, he did not do so.

Once we put that finding by the Hearing Committee aside, the Board does not conclude that this case presents the kind of aggravated circumstances, especially in a first offense involving the failure to respond to a single ethical complaint, that would warrant a fitness requirement. While Respondent's failure to respond is serious, and warrants suspension, in our judgment it is not "repeated" or otherwise especially aggravated, and there are no other factors in the record that raise serious doubt about Respondent's fitness to practice law.

Once again, Bar Counsel excepted to the Board's recommendation and asked that the court impose a fitness requirement; Godette filed no exception.

### III.

### LEGAL ANALYSIS

A. *Standard of review.*

The Board strongly suggested in its Report that if it had found that Godette deliberately avoided service of the complaint, it would have recommended that he be required to demonstrate fitness as a condition of reinstatement.[7] The Board, however, rejected, as unsupported by substantial evidence, the Committee's conclusion regarding this issue. The outcome of this case therefore turns in significant part on the standard which the BPR should apply to the Hearing Committee's *de facto* finding and the degree of deference that, under the circumstances, this court should accord to the Board's finding and the recommended sanction based on that finding.

1. *Review by the Board.*

BPR Rule 13.7 provides, in pertinent part, that "[w]hen reviewing the findings of a Hearing Committee, the Board shall employ [a] 'substantial evidence on the record as a whole' test." This court must accept a finding that is supported by substantial evidence in the record as a whole, "even though there may also be substantial evidence in the record to support a contrary finding." *Baumgartner v.*

7. At oral argument, counsel for the Board agreed that this is a fair reading of the Board's Report and Recommendation. We use the words "strongly suggested" because the language of the Report, quoted below, leaves some small room for doubt.

*Police & Firemen's Ret. & Relief Bd.,* 527 A.2d 313, 316 (D.C.1987). Because the Board is an appellate body vis-a-vis the Hearing Committee, it must likewise defer to the Committee's factual findings and view the record in the light most favorable to those findings. *Cf. Peay v. United States,* 597 A.2d 1318, 1320 (D.C.1991) (en banc).

■ In *In re Temple,* 629 A.2d 1203 (D.C.1993), we explained the principles applicable to the Board's review of findings by the Hearing Committee:

> The Board must accept the hearing committee's factual findings if they are supported by substantial evidence on the record as a whole. Although the Board must defer to the hearing committee's findings of basic facts, it is not obligated to defer to the committee's determination of "ultimate facts" or conclusions of law.

*Id.* at 1208 (citations omitted). The question whether Godette deliberately evaded service is one of basic, or evidentiary, fact; it is not a conclusion of law.

■ It is true that in this case, in finding that Godette deliberately evaded service, the Hearing Committee had before it the process server's affidavit, rather than his live testimony. The Board was thus reviewing a finding based on documentary evidence rather than on oral evidence. An appellate body's duty to defer to the findings of the trier of fact is obviously at its zenith where that trier of fact had the opportunity to hear the testimony and observe the demeanor of the witness. *See In re Shillaire,* 549 A.2d 336, 343 (D.C.1988); *see also In re S.G.,* 581 A.2d 771, 774–75 (D.C.1990). Nevertheless, in the context of appellate court review of a trial court's findings, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous," Super. Ct. Civ. R. 52(a), and "the Supreme Court has repeatedly confirmed the pre-

cept that the 'clearly erroneous' standard applies to review of all factual findings, whether they are based on oral or on documentary evidence." *Am. Sec. Bank v. Am. Motorists Ins. Co.,* 538 A.2d 736, 739–40 (D.C.1988) (citing, *inter alia, Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 574–75, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). We conclude that the same principle applies, by analogy, to the Board's review of the Hearing Committee's determination that Godette purposely evaded service.

We caution, however, that the Board's review should not focus exclusively on the question of purposeful evasion of service. Rather, the Board should consider the totality of the circumstances, including not only the process server's affidavit, but also the entire history of Godette's non-cooperation and failure to respond.

### 2. *Review by the court.*

■ Our review of the findings by the Board is governed by D.C. Bar R. XI, § 9(g)(1), which requires the court to "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record." We must also "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." *Id.* "Section 9(g)(1) endorses the Board's exercise of broad discretion in handing out discipline that is subject only to a general review for abuse of that discretion." *In re Cleaver–Bascombe,* 892 A.2d 396, 402 (D.C.2006) (citations and internal quotation marks omitted). But "[a]lthough we must give considerable deference to the Board's recommendations in these matters, the responsibility for imposing sanctions rests with this court in the first instance." *Temple,* 629 A.2d at 1207. In other words, "[t]he buck stops here." *Shillaire,* 549 A.2d at 342.

## B. *Deliberate evasion of service.*

 It is apparent from the language of the Board's decision which we have quoted *supra* at p. 1162, that an important, probably decisive, factor in its conclusion that Godette should not be required to prove fitness as a condition for reinstatement was its disagreement with the Hearing Committee's determination that Godette deliberately evaded service of process. In the perceived absence of substantial evidence showing deliberate evasion, the Board "conclude[d] that this is not an appropriate case for a fitness requirement." In our view, however, there was ample evidence supporting the Hearing Committee's position.

We note at the outset that Godette has never denied that he deliberately evaded service of process or that he failed to cooperate with Bar Counsel and the Board. Godette was on notice that he had been charged, *inter alia*, with failure to respond to the reasonable demands of the disciplinary authorities and with serious interference with the administration of justice. If he had participated in the proceedings before the Hearing Committee, which he voluntarily elected not to do, he would have realized that he had effectively been accused of evading service of process. If he did not attempt to evade service, he could readily have testified to that effect. However, Godette did not contest any of the evidence presented by Bar Counsel, and it is not the function of the Board (or of the court) to create hypothetical excuses

for him. Rather, we must determine whether the evidence of record, considered as a whole, is substantial.[8]

We entertain no doubt that, based on the record as a whole, there was substantial evidence that Godette deliberately avoided service of the complaint. "Events obscure, ambiguous, or even meaningless when viewed in isolation may, like the component parts of an equation, become clear, definitive, and informative when considered in relation to other action." *Local Lodge No. 1424, Int'l Ass'n of Machinists v. NLRB*, 362 U.S. 411, 416 n. 6, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960); *see also Shillaire*, 549 A.2d at 345 (quoting *Local Lodge No. 1424*). Thus, the history of

1. Bar Counsel's unsuccessful efforts to persuade Godette to respond to Mr. Hill–Bey's complaint (seven separate unanswered letters and an unanswered motion to compel over a six-month period);

2. Godette's telephoned message that he would submit a response to Bar Counsel within three days, followed by his failure to submit any response at all; and

3. Seven unsuccessful attempts by the process server to effect personal service upon Godette at times ranging from 6:40 a.m. to 8:30 p.m.,

showed that Godette had no intention of responding to the complaint or voluntarily accepting service, or, indeed, of cooperating with the disciplinary authorities in any manner whatsoever.[9] Thus, the members of the Hearing Committee were not pre-

---

8. The Board suggests that because the process server did not testify in person before the Hearing Committee, and because the Committee relied on his affidavit, the Committee could not evaluate his credibility. In our view, this analysis overlooks the fact that Godette had the opportunity to challenge the process server's credibility but elected not to do so, either in person or by affidavit. Go-

dette having defaulted on the point and having failed to exercise his right to cross-examine the process server, we do not believe that it is our function, or that of the Board, to raise a question as to the process server's credibility.

9. The only even arguably "cooperative" step that Godette took was to sign a receipt ac-

cluded from using their common sense in evaluating the record,[10] nor were they required to believe that the noises that the process server heard at Godette's home at, *e.g.*, 6:40 a.m. on May 12, 2003, might have been made by a minor ineligible to accept service or even by a dog or a cat. Similarly, the Hearing Committee was not obliged to attribute to coincidence the failure of anyone to open the door on each of the occasions, on different days, when the process server came to Godette's home. "Coincidences happen, but an explanation not predicated on happenstance is often the one that has the ring of truth." *Burwell v. United States*, 901 A.2d 763, 770 (D.C. 2006) (citations omitted).

Accordingly, we conclude that there was substantial evidence to support a finding, by clear and convincing evidence, that as a part of his extended and consistent refusal to cooperate in any way in the disciplinary process, Godette, *inter alia*, deliberately avoided service of process.

## C. *The sanction.*

As previously noted, we review the sanction proposed by the Board only for abuse of discretion. However, the exercise of discretion, *i.e.*, "[a]n informed choice among the alternatives," must "be based upon and drawn from a firm factual foundation." *Johnson v. United States*, 398

A.2d 354, 364 (D.C.1979); *see also In re J.D.C.*, 594 A.2d 70, 75 (D.C.1991). In this case, the Board's recommendation that a fitness requirement should not be imposed was predicated on the Board's finding that substantial evidence of purposeful evasion of service was lacking. We have, however, rejected that finding by the Board, and we agree with the Hearing Committee's contrary determination.

The Board itself has stated in its Report that a finding of deliberate evasion of service of process "would be an important factor justifying the imposition of a fitness requirement in addition to a period of suspension." We therefore remand so that the Board may reconsider, upon "a firm factual foundation," whether to recommend that we impose a proof-of-fitness requirement. *See In re Cater*, 887 A.2d 1, 20–26 (D.C.2005) (adopting standard for imposition of a fitness requirement).

Lest our decision be misunderstood, we add a few clarifying comments. Because of the procedural posture of this case, we necessarily have focused on the question of evasion of service of process. That inquiry has no talismanic significance in our case law, however. It simply is one type of evidence that tends to demonstrate deliberate disregard for the disciplinary process.[11]

---

knowledging the service on him of the Specification of Charges and related documents by registered mail. This single act, which was followed by complete non-participation in the disciplinary proceedings, was not sufficient to trump the substantial evidence, summarized in the text, supporting the Hearing Committee's finding. Godette did agree to two extensions of time requested by the Board for the filing of its brief in this court, but otherwise continued to ignore the proceeding.

**10.** The observation that "[w]hen we take our seats on the bench we are not struck with blindness, and forbidden to know as judges what we see as men [or women]," *Edwards v. Habib*, 130 U.S.App. D.C. 126, 140, 397 F.2d

687, 701 (1968), *cert. denied*, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969), applies to the members of the Hearing Committee just as it does to judges. Members of the Committee are not required "to shut their minds to that which all others can see or understand." *Poulnot v. District of Columbia*, 608 A.2d 134, 141 (D.C.1992) (citing *Child Labor Tax Case*, 259 U.S. 20, 37, 42 S.Ct. 449, 66 L.Ed. 817 (1922)).

**11.** In *In re Delaney*, 697 A.2d 1212 (D.C. 1997), the Hearing Committee's finding that the Respondent had evaded service of documents was relegated to a footnote. *Id.* at 1213 n. 3.

Our previous decisions properly have focused more broadly on the seriousness of the attorney's deliberate disregard for the "disciplinary process in violation of Rules 8.4(d) and XI § 2(b)(3)." *Delaney, supra* note 11, 697 A.2d at 1214. As we have explained, an attorney's complete failure to cooperate with the Office of Bar Counsel and the Board "constitutes a serious violation of the D.C. Rules of Professional Conduct, and ... an offender runs the risk of being subjected to serious sanctions, including a suspension coupled with a requirement to show fitness to practice law." *In re Lockie,* 649 A.2d 546, 547 (D.C.1994). "In circumstances where the respondent has repeatedly evinced indifference (or worse) toward the disciplinary procedures by which the Bar regulates itself, a requirement that the attorney prove fitness to resume practice is entirely reasonable." *In re Siegel,* 635 A.2d 345, 346 (D.C.1993). As we explained in *Cater,* "[i]n and of itself, such behavior raises a serious question about the attorney's continuing capacity and willingness to fulfill his or her professional obligations." 887 A.2d at 25.

## IV.

## CONCLUSION

It remains for us to determine whether Godette's indifference (or worse), as reflected in this record, was sufficiently grave to satisfy the foregoing standard. In *Cater,* we approved a three-factor test for determining whether a fitness requirement was appropriate where an attorney had failed to participate in the disciplinary inquiry. *Id.* at 25–26. In applying the "catchall third factor," *id.* at 26, the Board may give appropriate consideration not only to the number of disciplinary investigations that were thwarted by Godette's failure to cooperate—apparently that number was one—but also to the frequency with which he stonewalled the investigation of Mr. Hill–Bey's complaint, thereby causing Bar Counsel and the process server to expend, repeatedly and quite unnecessarily, time and resources on a matter which Godette could and should have made quite simple. The final assessment should not be simply a matter of numbers. Even in a single investigation, an attorney's disregard for the disciplinary process may be so repeated, deliberate, and prolonged that a requirement to prove fitness is entirely justified. *See, e.g., In re Giles,* 741 A.2d 1062 (D.C.1999) (per curiam).

The Board may also consider, in terms of Godette's commitment or lack thereof to his professional obligations, that since September 30, 2002, he has been administratively suspended from practice for non-payment of dues.[12] Because we owe deference to a recommendation by the Board that is based on a firm factual foundation, we remand the case to the Board so that it may recommend an appropriate sanction in the first instance. In proposing the discipline to be imposed, the Board must act on the premise that the record supports the Hearing Committee's conclusion that Godette deliberately avoided service of process.

*So ordered.*

WAGNER, Senior Judge, dissenting:

Contrary to the recommendations of both the Board on Professional Responsibility (Board) and the Hearing Committee, the majority recommends augmenting a thirty-day suspension sanction and other specified conditions, with a fitness requirement before reinstatement.[1] The Board

---

12. As to the differences between an administrative suspension for failure to pay Bar dues and a disciplinary suspension for misconduct, *see Sitcov v. District of Columbia Bar,* 885 A.2d 289, 298–99 (D.C.2005).

1. "The fixed period of suspension is intended to serve as the commensurate response to the attorney's past ethical misconduct. In contrast, the open-ended fitness requirement is

rejected recommending a fitness requirement for respondent's failure to respond to a single ethical complaint because it is not warranted under either the *Cater* standard, which this court has since adopted,[2] or under a comparative case analysis. The Board's recommendation is consistent with controlling legal principles and reasonable under the circumstances; therefore, there is no sound basis for rejecting it. *See* D.C. Bar R. XI, § 9(g)(1) (providing for this court to accept the Board's factual findings if supported by substantial evidence and to adopt its recommended sanction "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted").

In *Cater*, this court articulated a clear standard for the imposition of a fitness requirement, approving the Board's proposed test. *Cater, supra* note 1, 887 A.2d at 24. This court held in *Cater* that to justify conditioning reinstatement of a suspended attorney on proof of rehabilitation, there must be clear and convincing evidence in the disciplinary record that casts "serious doubt" on the attorney's fitness to practice law. *Id.* Unless the misconduct

established is sufficiently grave to support such a doubt, other aggravating factors justifying a fitness requirement must be established by clear and convincing evidence. *Id.* at 25. While ordinarily Bar Counsel does not have to justify a sanction by clear and convincing evidence, "[t]he difference here stems from our holding that the fitness requirement depends on a specific finding beyond the finding of a violation of the Rules." *Id.* In *Cater*, this court sanctioned the Board's tripartite test for determining the propriety of a fitness requirement in failure to respond cases, such as this one. The factors for consideration are "(1) the respondent's level of cooperation in the pending proceeding(s), (2) the repetitive nature of the respondent's lack of cooperation in disciplinary proceedings, and (3)other evidence that may reflect on fitness."[3] *Id.* (internal quotation marks omitted). Although the Board recognized that the misconduct involved in this case is serious and warrants a suspension, citing its own decision in *Cater*, the Board determined that the circumstances are not "especially aggravated, and there are no other factors in the record that raise serious doubt about Respondent's fitness to practice law."[4] The

intended to be an appropriate response to serious concerns about whether the attorney will act ethically and competently in the future, after the period of suspension has run." *In re Cater*, 887 A.2d 1, 22 (D.C.2005). One of the practical effects of a fitness requirement is to prolong substantially the period of suspension. *Id.* at 25 (adopting "clear and convincing" evidence standard for reinstatement enhancement, in part, in recognition that a fitness requirement "can transform a thirty-day suspension into one that lasts for years").

2. *See Cater, supra* note 1, 887 A.2d at 24 (approving the Board's proposed test for the imposition of a fitness requirement).

3. We acknowledged that in other types of disciplinary proceedings, the factors identified in *In re Roundtree*, 503 A.2d 1215 (D.C. 1985), would continue to be useful in determining whether a serious doubt exists as to

the attorney's continued fitness. *Cater, supra* note 1, 887 A.2d at 25. The *Roundtree* factors, which are used as a guide in determining whether to reinstate attorneys who have been suspended or disbarred, include:

(1) the nature and circumstances of the misconduct for which the attorney was disciplined;
(2) whether the attorney recognized the seriousness of the misconduct;
(3) the attorney's conduct since discipline was imposed, including the steps taken to remedy past wrongs and prevent future ones;
(4) the attorney's present character; and
(5) the attorney's present qualifications and competence to practice law.

*Roundtree, supra*, 503 A.2d at 1217 (citations omitted).

4. Applying the three-prong test set forth in *In re Cater*, Bar Docket No. 337–99, and *In re*

Board acknowledges that the first *Cater* factor is satisfied in that Godette totally failed to cooperate in this disciplinary proceeding; however it found that the second and third factors had not been established. It is the Board's position that Bar Counsel failed to establish the second factor, repetitive lack of cooperation in disciplinary proceedings, in that the attorney has not been involved in prior disciplinary proceedings, and his failure to respond involves a single, as opposed to multiple, complaints. The Board concluded that the third criterion was not established in that no other evidence was presented that would reflect upon Godette's fitness.

In its Report and Recommendation to this court and in its brief on review, the Board states that the failure to respond to a single complaint may raise a serious doubt about the attorney's fitness to practice when coupled with other evidence demonstrating a disregard of the disciplinary process, such as evasion of service of process. However, the Board rejected, as not supported by substantial evidence, an apparent finding of the Hearing Committee that Godette deliberately evaded service of process in this case.[5] Bar Counsel does not challenge before this court the Board's determination that a finding of evasion of service of process was not supported by substantial evidence. Nevertheless, the majority addresses the issue, concludes that the Board was in error in that regard, and therefore, imposes a fitness requirement. I disagree. In my view, the

majority's analysis is factually and legally flawed.

The evidence was that on May 3, 2003 at 6:10 p.m., and on May 12, 2003 at 6:40 a.m., the special process server reported that he received no answer when he attempted to serve Godette with the specification of charges, although it sounded as if someone was inside the premises. The Board found this evidence insufficient to make the inference that respondent was inside the premises at the time and simply not answering the door in order to evade service of process. Contrary to the majority, I conclude that the Board was correct in concluding that the inference could not be made on this evidence alone. It is fundamental that no inference can be drawn from facts that have not been established. *Pastor v. Cane*, 134 A.2d 95, 98 (D.C.1957) (reversing for a new trial where the trial court's decision was based on inferences having no support in the record); *In re Brown*, 147 U.S.App.D.C. 156, 165, 454 F.2d 999, 1008 (1971) (applying the principle that "[a]n inferred fact must find its nexus with a proven fact, and a conviction of a crime cannot rest on evidence that no more supports guilt than innocence") (citations omitted); *see also* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 2.04 (4th ed. rev. 2002) (stating that the jury is "permitted to draw, from the facts which you find have been proven, such reasonable inferences as you feel are justified in light of your experience"). Absent from this record are any proven facts from which it can

---

*Miller*, Bar Docket No. 55–00, subsequently sanctioned by this court in *Cater, supra*, the Hearing Committee stated that it could not find by clear and convincing that there is a serious doubt as to Godette's fitness to practice law. While it found the first factor established, with respect to the second factor, it found no evidence of a prior failure to cooperate with disciplinary proceedings. With respect to the third factor, it found "no evi-

dence of prior discipline or other evidence that may reflect on [Godette's] fitness."

5. The characterization "apparent" is used only because the Hearing Committee did not include a finding that Godette evaded service of process in its proposed Findings of Fact. Rather, the Hearing Committee made the inference in connection with its recommended sanction to the Board.

be established or inferred that Godette was inside the premises at any time that the process server attempted to serve him. In rejecting the inference, the Board mentioned that it was possible that the noises inside the premises could have come from "a minor not authorized to accept service, someone who had no idea who was at the door and who declined to open the door to an unannounced stranger, or aught we know, an animal." The majority states that the Hearing Committee was not "required to believe" these possibilities. Indeed, the Hearing Committee had no evidentiary basis to determine whether the noise inside the premises came from one of these possible sources or Godette. *See Pastor, supra,* 134 A.2d at 98. Surmise and speculation is not a substitute for evidence.

The majority suggests that the inference that Godette evaded service of process can be made from his earlier failure to cooperate in the preliminary proceedings. Specifically, the majority cites Godette's (1) failure to answer Bar Counsel's letters and motion, (2) his promise to submit a response to Bar Counsel and failure to do so, and (3) the process server's multiple unsuccessful attempts to serve Godette. None of these facts support the conclusion that Godette deliberately evaded service of process. The first two points are simply irrelevant to that determination.[6] The third fact, multiple service attempts, provides no evidence attributing the process server's lack of success at service to Godette's actions.[7] The majority's conclusion

that Godette never intended to accept service voluntarily based on his conduct in the preliminary proceedings is belied by the fact that he ultimately accepted service of the Specification of Charges and Petition Instituting Formal Disciplinary Proceedings by certified mail which he acknowledged by signing a return receipt. If an aggravating factor, such as evasion of service of process, is to be relied upon to enhance a suspension sanction, it must be established by clear and convincing evidence. *See Cater, supra* note 1, 887 A.2d at 25. That level of proof was clearly not met here.

The majority opinion concludes, alternatively, that Godette defaulted on the issue of whether he deliberately avoided service of process by failing to participate in the proceeding to offer evidence to the contrary. It cites in support of this proposition *In re Holdmann,* 834 A.2d 887, 889 (D.C.2003). *Holdmann,* which holds that an attorney in a disciplinary proceeding who fails to raise an issue before the Board cannot challenge it for the first time in this court, is inapposite. *See id.* Our rules impose upon the Board and this court the obligation to determine whether the factual findings upon which it bases discipline are supported by substantial evidence in the record, whether or not exceptions are filed by a respondent. *See* D.C. Bar R. XI, § 9(b) (providing that "[i]f no exceptions are filed, the Board shall decide the matter on the basis of the Hearing Committee record"); *In re Temple,* 629 A.2d 1203, 1208 (D.C.1993) (recognizing

---

**6.** It is not clear that the majority distinguishes between Godette's acts and omissions in the preliminary proceedings and the circumstances surrounding the efforts to serve him later with a formal specification of charges and Petition Instituting Formal Disciplinary Proceedings. This distinction is important to the analysis. What the Board conceded is that an additional finding that Godette evaded service of process (*i.e.,* service of the petition and specification of charges ·in the formal

proceeding) would be an aggravating factor supporting an enhancement of suspension with a fitness requirement.

**7.** Indeed, the process server's first attempt was unsuccessful because "there was no one by [Godette's] name at the address." Thereafter, the process server made his attempts at Godette's secondary address of record in Beltsville, Maryland.

that under D.C. Bar R. XI, § 4(e)(7) the Board has the power to make factual findings, but must accept the hearing committee's factual findings if supported by substantial evidence); D.C. Bar R. XI, § 9(g)(I) (providing that "[i]n determining the appropriate order, the court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record...."). Here, the Board, as required, applied the substantial evidence test to the Hearing Committee's proposed factual findings as set forth in its report, and rejected the conclusion that evasion of service of process had been established by the evidence. Respondent's failure to participate in the proceeding does not relieve the Board or this court of the obligation to determine whether the factual findings are supported by substantial evidence. Therefore, I cannot agree that Godette's failure to participate in the proceeding operates to establish by default a fact that is not supported by substantial evidence in the record.

Finally, guided by D.C. Bar Rule XI, § 9(g), in considering the appropriate sanction, this court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." Under this rule, " 'we enforce a general sense of equality in the sanctions handed out, but [the rule] otherwise commands that we should respect the Board's sense of equity in these matters unless that exer-

cise of judgment proves to be unreasonable.' " *Temple, supra,* 629 A.2d at 1207 (quoting *In re Haupt,* 422 A.2d 768, 771 (D.C.1980)) (other citations omitted). In a careful comparative case analysis, the Board has demonstrated that the recommended discipline falls within the range of discipline for similar violations. *See e.g., In re Scanlon,* 865 A.2d 534, 535 (D.C. 2005) (for violations of Rules 8.1(b), 8.4(d), and D.C. Bar R. XI, § 2(b)(3)(a), a thirty-day suspension with reinstatement conditioned upon respondent filing a response to the disciplinary complaint and six hours of continuing legal ethics and professional responsibility courses); *In re Lilly,* 699 A.2d 1135, 1136 (D.C.1997) (thirty-day suspension with reinstatement conditioned upon compliance with Bar counsel's requests for information). It has distinguished the cases cited by Bar Counsel in support of a fitness requirement. The Board has also demonstrated why this case does not meet the *Cater* standard for the imposition of a fitness requirement. *See Cater, supra* note 1, 887 A.2d at 25. The Board's recommendation is neither unreasonable nor inconsistent with this court's precedent; therefore, consistent with our rules, we should adopt it.

For all of the foregoing reasons, I must respectfully dissent from the opinion of the court.